**UNITED STATES of America, Appellee,**

v.

**Merlyn A. YAGOW, Appellant.**

**No. 91–2319.**

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 5, 1991.

Decided Jan. 8, 1992.

---

William Kirschner, Fargo, N.D., for appellant.

Stephen D. Easton, Fargo, N.D., for appellee.

Before JOHN R. GIBSON, Circuit Judge, and HEANEY and BRIGHT, Senior Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Merlyn Yagow appeals his conviction on one count of attempting to interfere with the administration of internal revenue laws in violation of 26 U.S.C. § 7212(a) (1988). A jury also found Yagow guilty of two counts of fraud and false statements under penalties of perjury in violation of 26 U.S.C. § 7206(1) (1988). The charges are based on Yagow's sending false IRS 1099 forms to individuals and institutions involved in the liquidation of his farm and his filing of those forms with the IRS. Yagow argues on appeal that there is no evidence to show that he "corruptly" endeavored to interfere with the administration of the internal revenue laws as required by 26 U.S.C. § 7212(a). We affirm the judgment of the district court.[1]

Throughout the 1970s and 1980s, Yagow borrowed substantial sums of money from the Production Credit Association in an effort to sustain his farming operation. In 1985, he defaulted on his loans and Production Credit filed suit against Yagow to collect the debt. After authorities started repossessing Yagow's machinery and grain, Yagow filed for bankruptcy under Chapter 11. The equipment was then returned to Yagow pending resolution of the bankruptcy proceedings.

Yagow failed to file a reorganization plan within the exclusive 120–day period allotted to the debtor. The bankruptcy court approved the liquidation plan filed by Yagow's creditors despite his objection. The court ordered all assets sold and appointed a liquidating trustee.

As law enforcement officials and others acting under court order removed equipment and grain from Yagow's property, Yagow asked various individuals their names, took their pictures, and recorded the license plate numbers of their cars or trucks. Yagow later contacted the North Dakota Motor Vehicle Department to obtain the names and addresses of the registered owners of the vehicles.

About two years later, Yagow filed an adversary action in bankruptcy court that listed as defendants the individuals involved in the repossession. In this suit, which was dismissed by the district court, Yagow claimed that he was entitled to a $9 million judgment.

---

1. The Honorable Patrick A. Conmy, United States District Judge for the District of North Dakota.

In January 1989, Yagow started sending "Notices of Bills Due and Payable" to those who helped remove his equipment and grain, those who purchased his real estate, and those who were involved in the state court prosecution of his son, Kevin, a minor, for possession of alcohol. The recipients included the state trooper who had regulated traffic going in and out of Yagow's farm during the repossession of the machinery, the truck driver hired to remove the grain, the purchaser of Yagow's lake home, and two purchasers of his farm land.

The bills claimed that the recipient owed Yagow money for taking or using Yagow's property or for services Yagow performed. Yagow later sent "past-due" statements, which included interest charges, to these same individuals.

Yagow next sent false IRS forms that treated the property or services allegedly received as the recipient's taxable gain. To some of his victims, Yagow sent IRS Form 1099–INT, a form used to show the recipient's interest income. To others, he sent IRS Form 1099–MISC, a form used to report payments that are not W–2 wage payments. Yagow also sent to each victim a W–9 form, which is used by a payer of money to obtain the employer identification number or social security number of the person to whom he has paid the money.

Yagow sent bogus bills and IRS forms to more than 100 people. One recipient, the trucker who hauled away the grain, received a bill of $183,695.03 for "damages" to Yagow's property. He later received a Form 1099–MISC showing non-employee compensation in that same amount, plus a "past due" statement claiming that he owed an additional $2,755.42 in interest.

Another recipient, the state trooper who directed traffic during the repossession, received a bill of $261,650.00 for removing grain and machinery in alleged violation of the bankruptcy stay. The bill claimed that the money was owed for work Yagow had purportedly done, as well as for 600 hours of attorneys' services. The bill also included a miscellaneous list of other expenses Yagow supposedly incurred. The trooper received a second bill for $675,886.00, which supposedly charged him for two tractors, a pickup truck, and some shop tools. The trooper never had possession of any of the items for which he was billed. Yagow later mailed to the trooper a W–9 form and two 1099 forms showing income in the amounts of $345,443.00 and $261,650.00.

Although the vast majority of those receiving Yagow's bogus bills and IRS forms had been involved in the liquidation of his farm, he also sent false IRS forms to the prosecuting attorney, state court judge, and highway patrolman who had been involved in the prosecution of his son on the alcohol charge.

At trial, Yagow testified that he sent the bills and IRS forms to "verify" claims for damages that he intended to pursue in court against Production Credit and other parties who had allegedly wronged him. He stated that he had calculated the bills by taking into account the value of the machinery repossessed, the amount of time he spent "discovering who took it," and the money he spent on attorneys. Yagow admitted that he neither gave money to nor had contracts with any of the individuals to whom he sent the bills or IRS forms, and that he never voluntarily transferred any assets to them.

In addition to sending the 1099–MISC and 1099–INT forms to various individuals, Yagow also sent copies of the forms to the IRS. The 1099 forms were accompanied by a signed Form 1096, which serves as a cover sheet for 1099 forms and includes information on who is submitting the attached 1099 forms, the total number of forms, and the total amount of money listed on the forms.[2] Yagow signed a statement on two separate 1096 forms—one submitted in 1989 and one submitted in

2. About two years after receiving the 1096 and 1099 forms, the IRS uses computers to compare the data reported on a particular Form 1099 with the tax return of the individual who received the income reported on the 1099. Tax examiners investigate any discrepancy between the amounts reported on the two forms.

1990—stating that "under penalties of perjury" he declared that he had "examined this return and accompanying documents" and that to the best of his "knowledge and belief they are true, correct, and complete." The signed statements formed the basis for the two false statement counts on which he was convicted.

Yagow sent 141 of the 1099 forms to the IRS in February 1989, followed by another 39 the following year. The amounts reported on the two 1096 forms did not match the total of the amounts reported on the attached 1099 forms. Yagow explained at trial that the amounts listed on the 1096 forms represented the total of the "actual amount of the bills" he had calculated but that each bill—and corresponding 1099 form—had been sent to more than one individual. Yagow also testified that he would have achieved his goal if his victims had paid him money or returned his property.

After the government rested its case, Yagow moved for an acquittal on the charge of attempting to interfere with the administration of internal revenue laws on the ground that the government presented no evidence to show that he acted "corruptly," as required by 26 U.S.C. § 7212(a).[3] The court denied the motion. Yagow also unsuccessfully objected to the government's jury instruction, which stated that "[t]o act 'corruptly' means to act with the intent to secure an unlawful advantage or benefit either for oneself or for another." Yagow argued that the advantage sought must be financial.

The jury found Yagow guilty on all three counts. The court sentenced him to a six-month sentence of imprisonment, with the first two months to be served concurrently with a twenty-one month sentence imposed in an earlier case.[4]

## I.

Yagow argues that the government presented no evidence that could sustain a finding that he acted corruptly in endeavoring to impede administration of the internal revenue laws.

■ In reviewing the sufficiency of the evidence to sustain a guilty verdict, we look at the evidence in the light most favorable to the government and accept as established all reasonable inferences supporting the verdict. We then uphold the conviction only if it is supported by substantial evidence. *United States v. Snelling*, 862 F.2d 150, 153 (8th Cir.1988); *United States v. Lee*, 743 F.2d 1240, 1250 (8th Cir.1984); *see also Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

■ Yagow suggests that the term "corruptly," as used in 26 U.S.C. § 7212(a), requires that he must have gained or sought financial advantage from filing the false IRS forms. We are aware of no Eighth Circuit case that addresses this issue. Yagow relies primarily on *United States v. Reeves*, 752 F.2d 995 (5th Cir.), *cert. denied*, 474 U.S. 834, 106 S.Ct. 107, 88 L.Ed.2d 87 (1985), in which the Fifth Circuit held that "corruptly" refers to an intent to "secure an unlawful advantage or benefit" either for oneself or for another. *Id.* at 1001. The court determined that section 7212(a) is aimed at prohibiting efforts to impede "the collection of one's taxes, the taxes of another, or the auditing of one's or another's tax records." *Id.* at 998. It rejected the argument that the term "cor-

---

3. Section 7212(a) states:

Whoever corruptly or by force or threats of force ... endeavors to intimidate or impede any officer or employee of the United States acting in an official capacity under this title, or in any other way corruptly or by force or threats of force ... obstructs or impedes, or endeavors to obstruct or impede, the due administration of this title, shall, upon conviction thereof, be fined no more than $5,000, or imprisoned not more than 3 years, or both....

4. We have recently considered the appeal of a woman convicted of conspiring with three co-defendants to devise and market a scheme promoting the filing of false 1099 forms. *United States v. Telemaque*, 934 F.2d 169 (8th Cir.1991). We have also recently considered the appeal of another farmer convicted of sending false 1099 forms. *United States v. Citrowske*, 951 F.2d 899 (8th Cir.1991).

ruptly" means having an "improper motive or a bad or evil purpose." *Id.* at 998–1000.

On remand, the district court in *Reeves* held that the defendant had acted "corruptly" by filing a frivolous lien against the residence of an IRS criminal investigator who had been investigating the defendant's tax returns. *See United States v. Reeves,* 782 F.2d 1323, 1325 (5th Cir.) (appeal after remand), *cert. denied,* 479 U.S. 837, 107 S.Ct. 136, 93 L.Ed.2d 79 (1986). The Fifth Circuit upheld this ruling, affirming the district court's finding that the defendant had filed the lien with the goal of harassing the investigator and diverting his time and attention away from his investigations. *Id.* at 1326. The record supported the conclusion that the lien lacked a legal basis. *Id.*

While we are inclined after examining *Reeves* to reject Yagow's assertion that the term corruptly is limited to situations in which the defendant wrongfully sought or gained a financial advantage, we need not decide this issue, as ample evidence was presented to show that Yagow acted with the motive of securing financial gain.

■ By his own admission, Yagow sent the bills to set up claims for damages, then sent the 1099 forms to the individuals to "further verify" the alleged claims. He also sent the forms to the IRS to "verify" those claims. He stated that he believed the IRS would process the forms. He also testified that his goal would have been achieved if he had been able to use the bogus bills and forms to get his property back or to receive the money that he claimed was owed to him.[5]

A jury could find that these purposes reflect an effort to "secure an unlawful advantage or benefit," and, in particular, to secure a financial gain. Looking at the evidence in the light most favorable to the verdict, we conclude that the evidence was sufficient to allow the jury to conclude that Yagow acted "corruptly" as required by section 7212(a).

---

5. On redirect examination, Yagow contradicted his earlier testimony by stating that his goal was not to get his property back. This later testimony does not affect our conclusion because when we evaluate the sufficiency of the evidence to

## II.

In a separate brief, filed pro se, Yagow argues that the district court lacked personal jurisdiction over him. We conclude that his arguments raise no legitimate legal issues.

For the foregoing reasons, we affirm the judgment of the district court.

support a criminal conviction, we resolve all factual conflicts in favor of the government. *United States v. Newton,* 756 F.2d 53, 54 (8th Cir.1985).