**UNITED STATES Of America, Plaintiff,**

v.

**John A. BRENNICK, Defendant.**

**Crim. No. 95–10197–NG.**

United States District Court,
D. Massachusetts.

Nov. 13, 1995.

---

1006

Terry Philip Segal, Robert Wolkon, Ferriter, Scobbo, Sikora, Caruso & Rodophele, Scott P. Lopez, Segal & Feinberg Law Office, Boston, MA, for defendant.

Stephen G. Huggard, United States Attorney, Boston, MA, for U.S.

## MEMORANDUM AND ORDER

GERTNER, District Judge.

## I. INTRODUCTION

The defendant, John A. Brennick, is charged with nine counts of structuring financial transactions to avoid currency reporting requirements (Counts 1–9), one count of bankruptcy fraud (Count 10), twenty-two counts of failing to truthfully account for and pay over payroll taxes (Counts 11–32), and one count of corruptly endeavoring to obstruct and impede the due administration of the internal revenue laws (Count 33).

In essence, the superseding indictment charges that Brennick, who was the president of a number of health care companies, withheld payroll taxes from his employees but failed to pay them over to the Internal Revenue Service, during the period from 1986 to 1993. Instead, the indictment charges, the defendant withdrew millions of dollars from these companies through structured cash transactions designed to avoid bank reporting requirements.

The indictment also charges that defendant subsequently filed for bankruptcy on behalf of himself and one of his companies, and that he made false statements under oath during the Section 341 meeting with creditors. Finally, the indictment charges that the defendant failed to timely remit withholding taxes, made misrepresentations to the IRS concerning the reasons for his failure to pay taxes, took his pay mainly in cash, structured cash transactions to avoid bank reporting requirements, obtained separate Employer Identification Numbers for each of his separate companies, retained checks made payable to the Internal Revenue Service by his staff rather than depositing them, and diverted business assets to his personal use, all as a way of corruptly endeavoring to obstruct and impede the due administration of the internal revenue laws.

Defendant has filed motions to dismiss various of the counts. I will address each of defendants' arguments in turn.

## II. DOUBLE JEOPARDY

Counts 11 through 32 charge the defendant with violating 26 U.S.C. § 7202, by failing to "truthfully account for and pay over, either in whole or in part, to the Internal Revenue Service ... federal income taxes ... due and owing to the United States of America." Defendant contends that because he has already been assessed civil penalties in connection with these charges, the instant prosecution is barred by the Double Jeopardy Clause of the Fifth Amendment. In particular, he argues that the earlier IRS assessment of civil penalties against him constituted a "punishment" and, because the constitution prohibits multiple punishments for the same offense, the government is precluded from any further punitive action (be it civil or criminal) against him. See United States v. Halper, 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989).

The superseding indictment charges the defendant with failing to pay approximately $1.4 million in withholding taxes, and paying late an additional $700,000 of such taxes. The IRS imposed penalties pursuant to four distinct sections of the Tax Code: (1) late deposit penalties (26 U.S.C. § 6656); (2) late payment penalties (26 U.S.C. § 6653); (3) late filing penalties (26 U.S.C. § 6651); and (4) bad check penalties (26 U.S.C. § 6657).[1]

---

1. Defendant also contends that he was informed that the IRS intended to impose a 100% penalty on Counts 21 and 32 for failing to truthfully account for and pay over trust fund taxes under 26 U.S.C. § 6672. The government states, how-

The total amount of these penalties exceeds $600,000.

In contending that these earlier penalties constituted an imposition of punishment which bars the government from engaging in further criminal prosecution, defendant asks this court to reject the reasoning of *Helvering v. Mitchell*, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917 (1938), which upheld the imposition of civil tax penalties against a double jeopardy challenge. In *Helvering*, the government prosecuted the defendant for willfully failing to pay income tax. After the defendant was acquitted, the government imposed a civil penalty equal to fifty percent (50%) of the unpaid tax. In upholding the imposition of the penalty against a double jeopardy challenge, the court held that the civil penalty was remedial, rather than punitive, and that the Double Jeopardy Clause therefore did not apply. The court found that the penalty was imposed "primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud." *Helvering*, 303 U.S. at 401, 58 S.Ct. at 634.

*Helvering* is directly on point. Defendant suggests, however, that two recent Supreme Court cases have called *Helvering*'s reasoning into question. *See Halper, supra; Montana DOR v. Kurth Ranch,* —— U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994). In *Halper*, the Supreme Court held for the first time that the imposition of a civil penalty could, under certain circumstances, raise double jeopardy concerns. *Halper* involved the imposition of civil penalties under the False Claims Act (FCA), which prohibits the making of false claims for payment from the federal government. Under the FCA, persons making false claims are subject to criminal prosecution but are also liable to the government for "a civil penalty of $2,000, an amount equal to 2 times the amount of damages the Government sustains ... and costs of the civil action." *Halper*, 490 U.S. at 438, 109 S.Ct. at 1896.

Halper had been charged and convicted of making false Medicare claims on 65 occasions, in a total amount of $585. He was

sentenced to two years in prison and fined $5,000. The government then attempted to collect a civil penalty for each of the sixty-five instances of false billing, for a total penalty in excess of $130,000. Halper contended that the penalty constituted a prohibited second punishment for the same offense of which he had been convicted. The government argued that because the penalty was a civil one, the Double Jeopardy Clause did not apply.

The Court concluded that the relevant criterion for triggering double jeopardy protection was not whether the penalty in question was characterized as "civil" or "criminal," but rather whether it was "punishment." *Halper*, 490 U.S. at 447–448, 109 S.Ct. at 1901. A civil sanction is not punishment, the Court stated, if its purpose is merely to reimburse the government for the approximate expenses it incurred because of the defendant's unlawful activity. *Id.* at 448, 109 S.Ct. at 1901–02. If, however, the penalty has a deterrent or retributive quality to it, then it must be considered a form of punishment, and the double jeopardy clause applies. *Id.*

In *Halper*, the district court had concluded that the government's expenses associated with Halper' unlawful acts were no greater than $16,000. The Supreme Court concluded that, on those facts, the government's proposed $130,000 penalty could not be reasonably interpreted as having a solely remedial purpose; therefore, it could not be imposed consistent with the Double Jeopardy Clause. *Id.* at 452, 109 S.Ct. at 1903–04. The Court was careful to note, however, the anomalous facts of the case and the "small gauge" nature of the defendant's activities. *Id.* at 449, 109 S.Ct. at 1902. It reiterated that "in the ordinary case, fixed-penalty-plus-double-damages provisions can be said to do no more than make the Government whole." *Id.*

In *Kurth Ranch*, the Court once again considered the circumstances under which a civilly imposed government exaction could constitute punishment for double jeopardy purposes. At issue in *Kurth Ranch* was a property tax which the State of Montana imposed on possessors of marijuana. The

ever, that it did not, and does not intend to,

impose this particular penalty on defendant.

tax was only imposed in conjunction with criminal prosecutions, and far exceeded the market value of the taxed property. The Court determined that taxes could be considered punitive under some circumstances.

The Court conceded that taxes, unlike penalties, fines and forfeitures,[2] could not be classified as "punishment" merely because they had some deterrent effect, since virtually all taxes modify people's behavior to some extent. *Kurth Ranch*, —— U.S. at ——, 114 S.Ct. at 1946–1947. Taxes are assumed, however, to have primarily a revenue raising purpose. It is only when the tax is clearly intended as a punishment, and loses its character as a "normal revenue law," that the Double Jeopardy Clause applies. *Id.* at ——, 114 S.Ct. at 1948.

In *Kurth Ranch*, the Court concluded that the tax in question was so unlike an ordinary tax that it could only be characterized as a form of punishment. Among the anomalous characteristics of the tax were the fact that it only applied to illegal activity, that it exceeded the actual market value of the taxed property, that it applied solely to property which had already been seized from its owner and destroyed by the government, and that it was only imposed upon the actual arrest of the taxpayer for criminal activity. *Id.* at ——, 114 S.Ct. at 1946–1948.

Does *Helvering* have continuing vitality in light of *Halper* and *Kurth Ranch?* A number of factors suggest that it does. First, both the *Halper* and *Kurth Ranch* courts cited *Helvering* with approval, strongly indicating that the Court did not intend to overrule *Helvering sub silentio*. In *Halper*, the Court cited *Helvering* for the proposition that, upon a determination that a statute was intended to be remedial rather than punitive, double jeopardy principles did not apply. *Halper*, 490 U.S. at 442–443, 109 S.Ct. at 1899. Although *Halper* went on to use a different method from *Helvering* to determine whether the statute in question was punishment, it never questioned that *Helvering* was correctly decided. In *Kurth Ranch*, *Helvering* was cited for its assumption that a

tax could, under some circumstances, violate the Double Jeopardy Clause, regardless of the nomenclature (penalty, addition to tax, assessment) used to describe it. *Kurth Ranch*, —— U.S. at ——, n. 16, 114 S.Ct. at 1946, n. 16. Thus in neither case is there a suggestion that *Helvering* was incorrectly decided, or that it would be decided differently today.

In addition, both *Halper* and *Kurth Ranch* take pains to stress the anomalous character of the penalty and the tax involved, respectively, and clearly distinguish them from "normal" cases. In *Halper*, the Court describes the case before it as the "rare" one, "where a fixed-penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused" and where the civil penalty "bears no rational relationship to the goal of compensating the Government for its loss." *Halper*, 490 U.S. at 449, 109 S.Ct. at 1902. In *Kurth Ranch*, the facts were equally extreme, involving a tax which had virtually none of the ordinary characteristics of a tax, but which was clearly targeted at punishing those who had already been arrested for a specific criminal offense. *Kurth Ranch*, —— U.S. at ——, 114 S.Ct. at 1948 (describing the tax as "a concoction of anomalies, too far-removed in crucial respects from a standard tax assessment to escape characterization as punishment.")

In contrast to the sanctions imposed in *Halper* and *Kurth Ranch*, the penalties at issue here are neither extreme, nor unrelated to the damage which the defendant caused to the United States. The civil penalties, all combined, amount to only twenty-three percent (23%) of the total amount of tax which defendant failed to pay, or failed to pay on time. This is less than the fifty-percent (50%) penalty at issue in *Helvering*. Moreover, the amount at issue here is entirely consistent with other liquidated damages provisions which the Supreme Court has found to be purely remedial. *See Rex Trailer Co. v. United States*, 350 U.S. 148, 76 S.Ct. 219, 100 L.Ed. 149 (1956) (upholding liqui-

---

**2.** In *Austin v. United States*, —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), the Court had determined that civil drug forfeitures under

21 U.S.C. § 881 were punishment for the purposes of the Eighth Amendment's excessive fines clause.

dated penalty equal to $2,000 per violation of law prohibiting purchase of government surplus property by non-qualified individuals); *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943) (upholding liquidated damages penalty of double the amount of false claims plus $2,000 under same false claims provision at issue in *Halper* where total penalty was approximately $315,000 for false claims totaling $101,500).

In sum, *Halper* teaches that an administrative penalty is punishment only where it cannot be reasonably related to the damages the government incurred in prosecuting the case. *Kurth Ranch* teaches that a taxation scheme is punishment if it moves so far from ordinary taxation so as to lose its character as a tax. Neither of those conditions obtain here. The penalty in this case is neither disproportional to the government's damages, nor is it a clearly punitive tax. Accordingly, it is not a punishment within the meaning of the Double Jeopardy Clause. *See Thomas v. C.I.R.,* 62 F.3d 97, 99–101 (4th Cir.1995).

### III. WHETHER USE OF TERM "CORRUPTLY" IS UNCONSTITUTIONALLY VAGUE

Count 33 charges the defendant with a violation of 26 U.S.C. § 7212(a), which provides:

> Whoever corruptly or by force or threats of force (including any threatening letter of communication) endeavors to intimidate or impede any officer or employee of the United States acting in an official capacity under this title, or *in any other way corruptly or by force or threats of force* (including any threatening letter or communication) *obstructs or impedes, or endeavors to obstruct or impede, the due administration of this title,* shall, upon conviction thereof, be fined not more than $5,000, or imprisoned not more than 3 years, or both, except that if the offense is committed only by threats of force, the person convicted thereof shall be fined not more than $3,000, or imprisoned for not more than 1 year, or both. The term "threats of force", as used in this subsection, means threats of bodily harm to the officer or employee of

the United States or to a member of his family. (emphasis added)

The government charges that the defendant used a series of deceptive techniques, including taking his pay in cash, setting up corporations with multiple employer identification numbers, structuring cash transactions to avoid detection, and misrepresenting the state of his finances to the IRS, in a corrupt endeavor to obstruct and impede the IRS from administering the internal revenue laws applicable to defendant's corporations. Defendant contends that the statute is unconstitutionally vague as applied to him, because the use of the word "corruptly" did not place him on notice that the acts of which he is accused were prohibited.

Constitutional vagueness challenges (other than those implicating First Amendment rights) must be considered in light of the specific facts of the case. *Maynard v. Cartwright,* 486 U.S. 356, 361, 108 S.Ct. 1853, 1857, 100 L.Ed.2d 372 (1988); *United States v. Powell,* 423 U.S. 87, 92, 96 S.Ct. 316, 319–20, 46 L.Ed.2d 228 (1975). A challenge for vagueness will fail if a reasonable person would have known from the language of the statute that their conduct was at risk. *Maynard,* 486 U.S. at 356, 108 S.Ct. at 1855. If the language of the challenged statute "can be made constitutionally definite by a reasonable construction ..., this Court is under a duty to give the statute that construction." *United States v. Harriss,* 347 U.S. 612, 618, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954). "[I]f the general class of offenses to which the statute is directed is plainly within its terms, the statute will not be struck down as vague even though marginal cases could be put where doubts might arise." *Id.*

All five of the circuit courts which have considered the issue have found a consistent and constitutional meaning for the term "corruptly" as it is used in Section 7212(a). Starting with *United States v. Reeves,* 752 F.2d 995 (5th Cir.1985), *cert. denied,* 474 U.S. 834, 106 S.Ct. 107, 88 L.Ed.2d 87 (1985), each court has determined that "corruptly" means "with the intent to secure an unlawful benefit or advantage either for oneself or for another." 752 F.2d at 1001; *see also United*

States v. Bostian, 59 F.3d 474, 478 (4th Cir. 1995); *United States v. Hanson,* 2 F.3d 942, 946 (9th Cir.1993); *United States v. Mitchell,* 985 F.2d 1275, 1278 (4th Cir.1993); *United States v. Yagow,* 953 F.2d 423, 427·(8th Cir. 1992); *United States v. Popkin,* 943 F.2d 1535, 1540 (11th Cir.1991), *cert. denied,* 503 U.S. 1004, 112 S.Ct. 1760, 118 L.Ed.2d 423 (1992).

*Reeves* was the first case to consider the proper definition of "corruptly" in Section 7212(a). It involved the prosecution of a tax protester who had placed improper liens on an IRS investigator's house as a means of harassment. The defendant had been convicted after a non-jury trial in which the trial judge had applied a definition of "corruptly" as meaning "with improper motive or bad or evil purpose." The Fifth Circuit rejected this definition. Although it noted that a similar definition of "corruptly" had been used in cases interpreting 18 U.S.C. § 1503, the jury tampering statute, it held that the use of a similarly broad definition in the tax context would render the statute unconstitutionally vague. *Reeves,* 752 F.2d at 999. The court noted that jury tampering refers to an act which is almost invariably improper and which occurs in the very narrow context of a judicial proceeding. By contrast, the court reasoned, "the Internal Revenue Service is permitted great power to intrude on, and investigate virtually every aspect of economic life to effect its purpose of administering the tax laws; thus, the narrow circumstances in which section 1503 applies have no parallel in cases involving section 7212(a)." *Id.* at 999.

Noting its obligation to construe statutes to avoid constitutional questions where possible, *id.* at 999 (*citing Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974)), the court turned to Section 7212(a)'s legislative history. That history, which was admittedly sparse, suggested to the court that the statute was intended to prohibit those acts by which the defendant acts to

gain an improper advantage or benefit.[3] Since *Reeves,* every other court considering the·issue has reach a similar conclusion. *See Bostian,* 59 F.3d at 478; *Hanson,* 2 F.3d at 946; *Mitchell,* 985 F.2d at 1278; *Yagow,* 953 F.2d at 427; *Popkin,* 943 F.2d at 1540.

Notwithstanding the uniform appellate authority as to the meaning of corruptly in Section 7212(a), defendant contends that it is vague as applied to the particular conduct alleged in this case. In support of this proposition, he relies principally on the case of *United States v. Poindexter,* 951 F.2d 369 (D.C.Cir.1991), *cert. denied,* 506 U.S. 1021, 113 S.Ct. 656, 121 L.Ed.2d 583 (1992). In *Poindexter,* the court held that the word "corruptly" as used in a federal obstruction of justice statute, 18 U.S.C. § 1505, was unconstitutionally vague as applied to the defendant's actions. Poindexter had been President Reagan's National Security Advis-·or. He had been accused of lying during the course of a congressional investigation of the Iran–Contra affair and charged under 18 U.S.C. § 1001 (making false statements to a government department) as well as 18 U.S.C. § 1505. Section 1505 provides, in relevant part, for the criminal prosecution of anyone who "corruptly ... influences, obstructs, or impedes or endeavors to influence, obstruct or impede ... the due an proper exercise of the power of inquiry under which any inquiry or investigation is being had by either House [of Congress], or any committee of either House."

In a somewhat surprising decision, the court concluded that Poindexter could not be prosecuted under Section 1505 because it did not put a reasonable person on notice that lying to a congressional investigation was within the scope of the conduct it prohibited. *Poindexter,* 951 F.2d at 379–380. First, the court examined the plain language of the statutes and concluded that the term "corruptly influencing" a congressional investigation did not clearly encompass lying to it. *Id.* at 377–378. The court then turned to the

---

**3.** The court referred to the Senate report on Section 7212, which stated, in part, that "this section provides for the punishment of threats or threatening acts against agents of the Internal Revenue Service ... on account of the performance by such agents ... of their official duties. This section will also punish the corrupt solicitation of an internal revenue employee." The court concluded its definition of "corruptly" should only criminalize those acts "substantially similar in result to the offenses expressly mentioned." *Reeves,* 752 F.2d at 1000–1001.

statute's legislative history and found it to be ambiguous, at best. *Id.* at 378–384. Finally, the court considered whether the statute had been sufficiently clarified by prior judicial interpretations to give the requisite notice of what was prohibited. Although it found that some courts had held that Section 1505 applied to similar dishonest statements in other contexts, none had announced a "coherent principle for inclusion or exclusion," and therefore prior decisions had done nothing to clarify the meaning of the statute as applied to Poindexter's conduct. *Id.* at 384–386.

I have carefully considered the *Poindexter* court's analysis and conclude that its reasoning does not apply here. While I agree that the term "corruptly" is capable of multiple meanings, its meaning in Section 7212(a) has been sufficiently clarified by judicial interpretation to have placed the defendant on adequate notice of the criminality of the charged behavior.

The statute at issue in *Poindexter*, 18 U.S.C. § 1505, is similar to Section 7212(a) in that both statutes make it unlawful to "corruptly" obstruct or impede certain types of government processes. Section 1505 goes beyond Section 7212(a), however, because it also prohibits one from corruptly "influencing" a congressional investigation. This distinction is significant. Unlike the term "obstruct" or "impede", the word "influence" does not have any inherent connotation of improperly interfering with legitimate government activity. Some actions which influence a congressional investigation are perfectly appropriate and even to be encouraged. The word "corruptly" must therefore serve to put potential defendants on notice as to exactly what types of influence are prohibited by the law. The *Poindexter* court concluded that in the context of the Iran–Contra hearings, lying was not clearly a type of "corrupt influence" within the meaning of the statute.

By contrast, Section 7212(a) simply prohibits "obstructing" or "impeding" the due administration of the Internal Revenue Code. These words have an inherent connotation of impropriety and thus do not need the modifier "corruptly" to put potential wrongdoers on notice as to what category of activities is

covered by the statute. The use of "corruptly" in Section 7212(a) does not limit the category of acts which obstruct or impede the IRS, but rather identifies the state of mind necessary for such acts to rise to the level of a felony: intending to secure an unlawful benefit for oneself or others.

Another important distinction between *Poindexter* and the instant case is the history of judicial interpretation of the statute in question. The *Poindexter* court held that Section 1505's language had not been sufficiently clarified by prior decisions to "give the requisite notice and to protect against prosecutors, and juries who pursue their personal predilections." *Poindexter*, 951 F.2d at 384. By contrast, Section 7212(a) has been uniformly interpreted by five different Courts of Appeals, each of them adopting the same "coherent principle" for determining the state of mind required under the statute.

The ultimate inquiry here is whether it is possible to identify a "core" meaning to the language of Section 7212(a), and whether, having identified that meaning, it adequately put the defendant on notice that his alleged acts were prohibited. *See Smith v. Goguen*, 415 U.S. 566, 577–578, 94 S.Ct. 1242, 1249, 39 L.Ed.2d 605 (1974); *Poindexter*, 951 F.2d at 385. I believe that the answer to this question is "yes."

Section 7212(a) prohibits those acts which "in any ... way" "obstruct" or "impede" the IRS from carrying out the tax laws, so long as they are done either through force or threats of force, or corruptly. It is clear that the acts which the defendant is charged with committing impeded the IRS from carrying out the tax laws, as they had the effect of hiding from the IRS the extent to which and the reasons why defendant was failing to fulfill his obligation to report and pay over withholding tax to the government. A defendant committing such acts would be on notice that they could result in criminal prosecution if they were done "corruptly" within the meaning of the statute.

 It is fundamental that words found in statutes should be given their ordinary meaning, absent a special statutory definition. *See, e.g., Perrin v. United States,*

444 U.S. 37, 41–45, 100 S.Ct. 311, 313–15, 62 L.Ed.2d 199 (1979). Black's Law Dictionary defines "corruptly" as importing "a wrongful design to acquire some pecuniary or other advantage." Another source describes it as the adverbial form of "corrupt," meaning "depraved, evil: perverted into a state of moral weakness or wickedness ... of debased political morality: characterized by bribery, the selling of political favors, or other improper political or legal transactions or arrangements." *See U.S. v. North,* 910 F.2d 843 (D.C.Cir.1990) (quoting Webster's Third New International Dictionary 512 (1976)). Recognizing the potential vagueness problems with terms such as "depraved" "evil" and "moral weakness", courts construing Section 7212(a) have consistently chosen the former definition. *See Reeves,* 752 F.2d at 1001; *Bostian,* 59 F.3d at 478; *Hanson,* 2 F.3d at 946; *Mitchell,* 985 F.2d at 1278; *Yagow,* 953 F.2d at 427; *Popkin,* 943 F.2d at 1540. It thus appears clear that, notwithstanding any doubts about the exact parameters of the word "corruptly," actions taken with the intent to gain an unlawful benefit clearly fall within its purview. "[O]ne to whose conduct a statue clearly applies may not successfully challenge it for vagueness." *Love v. Butler,* 952 F.2d 10, 13 (1st Cir.1991). Accordingly, defendant's vagueness challenge must fail.

## IV. *WHETHER THE INDICTMENT CONTAINS MULTIPLICITOUS COUNTS*

■ Defendant contends that the indictment contains multiplicitous counts, some of which must be dismissed in order to avoid double jeopardy problems. In particular, defendant argues that Count 33 is multiplicitous with Counts 1–9 and Counts 11–32, since the same alleged structuring of currency transactions which form the basis for Counts 1–9 and the same alleged failures to account for and pay over taxes charged in Counts 11–32, are among the factual allegations in Count 33.

■ This argument is without merit. The doctrine against multiplicity of charges "is based on the Double Jeopardy Clause of the Fifth Amendment, which assures that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." *United States v. Nakashian,* 820 F.2d 549 (2d Cir.1987) (quoting *Brown v. Ohio,* 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977)); *see United States v. Lilly,* 983 F.2d 300, 303–304 (1st Cir.1992) (multiple charges under bank fraud statute multiplicitous where all related to single fraudulently obtained loan); *United States v. Brandon,* 17 F.3d 409, 422–424 (1st Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 80, 130 L.Ed.2d 34 (1994) (multiple bank fraud charges were not multiplicitous where they related to a series of fraudulently obtained loans). When multiple charges are brought in a single prosecution, the ultimate issue in a double jeopardy challenge is one of Congressional intent. Where Congress intended a single act to constitute multiple offenses, the Double Jeopardy Clause is not offended by multiple charges being brought in a single trial. *Albernaz v. United States,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981); *United States v. Centeno–Torres,* 50 F.3d 84, 85 (1st Cir.1995).

■ Absent explicit congressional authorization of multiple punishments, courts apply the test of *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) to determine whether Congress intended particular conduct to constitute multiple offense. *See United States v. Smith,* 46 F.3d 1223, 1234–1235 (1st Cir.1995), *cert. denied* —— U.S. ——, 116 S.Ct. 176, 133 L.Ed.2d 116 (1995) (money laundering and bank fraud charges not multiplicitous where they do not constitute a single offense under the test of *Blockburger v. United States* ); *United States v. Faulhaber,* 929 F.2d 16, 19 (1st Cir.1991) (applying *Blockburger* test to allegedly multiplicitous securities fraud, mail fraud and bank fraud charges); *United States v. Serino,* 835 F.2d 924, 930 (1st Cir. 1987) (applying *Blockburger* test to allegedly multiplicitous charges of conspiracy to commit mail fraud and mail fraud). Under *Blockburger,* "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires

proof of a fact which the other does not." *Blockburger*, 284 U.S. at 304, 52 S.Ct. at 182.

As discussed above, Count 33 charges the defendant with corruptly endeavoring to obstruct or impede the due administration of the internal revenue laws, in violation of 26 U.S.C. § 7212(a). This charge requires proof that the defendant 1) corruptly, 2) endeavored, 3) to obstruct or impede the due administration of the internal revenue laws. By contrast, Counts 1–9 charge violations of the currency transaction reporting laws, 31 U.S.C. §§ 5313, 5322 and 5324, and require proof of willful structuring of currency transactions with a domestic financial institution for the purpose of evading currency transaction reporting requirements. Counts 11–32, which charge violations of 26 U.S.C. § 7202, require proof of willful failure to account for and pay over withholding taxes.

Defendant accurately concedes that none of these charges is "technically" the same under the *Blockburger* test. Counts 1–9 require an intent to avoid currency reporting requirements (an element missing from Count 33), but do not entail an attempt to obstruct or impede the internal revenue laws (a necessary element in Count 33). Similarly, Counts 11–32 entail willfully failing to truthfully account for and pay over withholding taxes (an element not present in Count 33), but do not entail a corrupt intent, as does Count 33.

■■■ Defendant contends, however, that Count 33 is still multiplicitous because the allegations contained within it are "in substance" the same as those in the earlier counts. Defendant appears to be arguing, in essence, that although the counts are formally distinct, there is "no realistic likelihood of violating the narrow provision ... without also violating the broad provision." *See United States v. Seda*, 978 F.2d 779, 781 (2nd Cir.1992) (holding that indicting charging both bank fraud and making false statements to a bank was multiplicitous even though the two charges were distinct under the *Blockburger* test).

In *Seda*, a divided panel of the Second Circuit held that, *Blockburger*'s "look-only-at-the-statute approach is inappropriate in some cases where one of the statutes covers a broad range of conduct." *Seda*, 978 F.2d at 781. The defendant had been charged with violating 18 U.S.C. § 1014, which prohibits making false statements on a loan application to a federally insured institution, and with violating 18 U.S.C. § 1344, a much broader statute, which prohibits the execution of any "scheme or artifice" to defraud a federally insured institution. Even though it was possible to conceive of a scheme in which the narrower statute, Section 1014, could be violated without violating the broader one, Section 1344,[4] the court held that such a possibility was "remote" and that this remoteness was sufficient to overcome *Blockburger*'s presumption that the two statutes were intended to create separate offenses. *Id.* at 781–782.

*Seda* has not been adopted in this Circuit, and, given the Court of Appeals consistent reference to the *Blockburger* test in multiplicity challenges, *see Smith*, 46 F.3d at 1234–1235; *Faulhaber*, 929 F.2d at 19; *Serino*, 835 F.2d at 930, I have some doubt as to whether it would be. However, even applying *Seda*'s holding here, I do not find the challenged counts to be multiplicitous. With respect to Counts 1–9 (relating to structuring), the issue is not even close. Structuring does not in itself involve a violation of the internal revenue laws, and it is quite easy to conceive of a realistic scenario in which currency structuring would not involve an endeavor to obstruct the internal revenue laws (for example to avoid detection of an illegal business).

The issue with respect to Counts 11–32 (relating to failure to report and pay over withholding tax under 26 U.S.C. § 7202) is closer, since these counts at least involve violations of the internal revenue code. However, even here, I find that there is far more than a "remote" possibility that a violation of Section 7202 could be proven without simultaneously proving a violation of Section

---

4. Section 1014, but not Section 1344, would be violated where the defendant intentionally understated his income in order to induce a bank to deny a loan application, so that the defendant could avoid performing under a real estate purchase and sale agreement.

7212(a). Unlike 26 U.S.C. § 7201, the general tax evasion statute, Section 7202 does not involve taxes which are personally owed by defendant. The taxes at issue in Section 7202 are taxes owed by others (the defendant's employees), which the defendant is required to collect, account for, and pay over to the Internal Revenue Service. A failure to comply with Section 7202 does not, therefore, necessarily confer any unlawful benefit on the defendant. He may, for example, fail to collect the tax from his employees in the first instance out of hatred for the government or a belief that withholding taxes are immoral, thus violating the law without putting any cash in his own pocket. By contrast Section 7212(a) entails an intent to obtain an unlawful benefit by endeavoring to obstruct operation of the tax laws. This is an additional evil which Section 7202 does not address.[5]

## V. THE PROPER CONSTRUCTION OF 26 U.S.C. § 7202

■ Counts 11–32 charge the defendant with violation of 26 U.S.C. § 7202, which provides as follows:

Any person required under this title to collect, account for, and pay over any tax imposed by this title who willfully fails to collect or *truthfully account for and pay over such tax* shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, together with the costs of prosecutions. (emphasis added).

Defendant contends that the emphasized language requires that the government prove both a failure to account for *and* a failure to pay withholding tax to make out a violation of this statute. The government responds that the words "truthfully account for and pay over such tax" represent a unitary obligation of the defendant, the failure to do any part of which violates the statute. Although two courts have suggested in *dicta* that defendant's reading is the correct one, *see*

*United States v. Poll,* 521 F.2d 329, 334, n. 3 (9th Cir.1975); *Wilson v. United States,* 250 F.2d 312, 318 (9th Cir.1958) (construing predecessor statute), there is no recent or definitive authority interpreting the language at issue here.

■ In construing a statute, this court's objective "is to ascertain the congressional intent and give effect to the legislative will." *Philbrook v. Glodgett,* 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975). Courts must first determine whether the plain language makes its meaning reasonably clear. *Negonsott v. Samuels,* 507 U.S. 99, 103–05, 113 S.Ct. 1119, 1122–1123, 122 L.Ed.2d 457 (1993). If the plain language is ambiguous, courts may look to the legislative history of the statute to determine its meaning. *See Busic v. United States,* 446 U.S. 398, 405, 100 S.Ct. 1747, 1752, 64 L.Ed.2d 381 (1980). In interpreting a criminal statute, where no clear meaning can be discerned, the ambiguity should be resolved in favor of lenity. *Id.* at 406, 100 S.Ct. at 1753.

■ Ordinarily, the use of the term "or" in a statute signifies a disjunctive requirement, while "and" signifies a conjunctive one. However, this is not always the case, the ultimate meaning of these words depends on the context in which they are used. *See United States v. One 1973 Rolls Royce,* 43 F.3d 794, 814–816 (3rd Cir.1994); *see also Bruce v. First Federal Savings and Loan,* 837 F.2d 712, 715 (5th Cir.1988) (interpreting "and" disjunctively); *Wirtz v. Ocala Gas Co.,* 336 F.2d 236, 243 (5th Cir.1964) (same); *Peacock v. Lubbock Compress Co.,* 252 F.2d 892, 893 (5th Cir.), *cert. denied,* 356 U.S. 973, 78 S.Ct. 1136, 2 L.Ed.2d 1147 (1958) ("the word 'and' is not a word with a single meaning, for chameleonlike, it takes its color from its surroundings"); *Union Cent. Life Ins. Co. v. Skipper,* 115 F. 69 (8th Cir.1902) (interpreting "and" disjunctively to avoid absurd result); *Perfect Photo v. Grabb,* 205 F.Supp. 569, 571 (E.D.Pa.1962) ("and" can be construed as meaning "or"); *United States v. Cumbee,* 84 F.Supp. 390, 391 (D.Minn.1949)

---

5. It is also notable that Section 7202 specifically provides that its penalties are "in addition to other penalties provided by law."

(same); *United States v. Mullendore*, 30 F.Supp. 13, 15 (N.D.Okla.1939) (same).

In this case, the statute penalizes those who "intentionally fail[ ] to ... truthfully account for and pay over" withholding tax. ·The phrase "truthfully account for and pay over" is, taken by itself, unambiguously conjunctive. Somebody who was required to "truthfully account for and pay over" a tax would be required to do both things to satisfy the requirement. However, this phrase is the object of the verb "fail." The dictionary defines "fail" as "to be unsuccessful in the performance or completion of", as in "He failed to do his duty." Random House Unabridged Dictionary (1987), Def. 9. Thus, the statute appears to impose a penalty on someone who intentionally is unsuccessful in the performance or completion of the requirement—that he truthfully account for and pay over withholding tax. Under this reading, any intentional failure to complete the required task (to truthfully account for and pay over the tax) constitutes a crime. *Cf. Kinnie v. United States*, 994 F.2d 279, 283 (6th Cir.1993) (liability exists under 26 U.S.C. § 6672, the civil analogue to Section 7202, when defendant is "a responsible person" and "willfully failed to pay over the taxes due"); *Purcell v. United States*, 1 F.3d 932 (9th Cir.1993) (liability under Section 6672 "entails showing that the individual both was a 'responsible person' and acted willfully in failing to collect or pay over the withheld taxes.").

Defendant claims that this reading of the statute is inconsistent with the holdings in *Wilson* and *Poll*. *Wilson* involved a prosecution under Section 2707(c) of the Internal Revenue Code of 1939, the predecessor to Section 7202. Section 2707(c) imposed criminal sanctions on any person required to collect, account for and pay over withholding tax "who willfully fails to collect or truthfully account for and pay over such tax, and any person who willfully attempts in any manner to evade or defeat any tax imposed...." As in the instant case, the defendant in *Wilson* had collected withholding tax from his employees, had truthfully reported tax, but had failed to pay the tax over to the government. Instead the defendant had used the money to pay other expenses of his failing business. He was charged in the indictment with "failing and refusing to pay said ... taxes withheld from the wages of employees."

The principal issue on appeal was the meaning of the statute's willfulness requirement. The court held that willfulness required more than mere knowing failure to pay the tax when funds were available to do so. Rather,·the court found that willfulness entailed an intent to evade the payment of taxes. Thus, if the trier of fact found that the defendant's failure to pay tax was part of an attempt to save his business (and pay the tax later) rather than an attempt to avoid paying tax entirely, there would be no basis for conviction. *Wilson*, 250 F.2d at 324–325.

In reaching its conclusion, the *Wilson* court stated in dicta that, "[s]ince appellant both collected and accounted for the withheld monies, conviction under this section can be predicated only on the willful attempt to evade or defeat the payment of the taxes." *Wilson*, 250 F.2d at 318. Seventeen years later, in *Poll*, the court, interpreting Section 7202, relied upon this dicta to support its own dictum that the crime "require[s] two failures to act, willful failure to truthfully account and willful failure to pay·over." *Poll*, 521·F.2d at 334, n. 3. But like *Wilson*, *Poll* did not turn on a determination of the elements of the crime, but again on the definition of "willfulness."

In *Poll*, the defendant not only had failed to pay over the tax but also had filed returns incorrectly stating the amount of tax he had collected. The defendant contended that Section 7202 "requires proof of both a willful failure to truthfully account and a willful failure to pay over and ... [that] his failure to pay over [could not] be considered 'willful'" in light of his offer to prove that he intended to pay the tax later." *Poll*, 521 F.2d at 330–331. In particular, he argued that 21 willfulness entailed an intent to defraud the government, and that he should have been permitted to prove that it was the financial difficulties rather than fraudulent intent, which led him to fail to pay the tax.

The court held that the crime did not entail an intent to defraud the government, but only an "evil motive" or "improper pur-

pose." *Poll*, 521 F.2d at 332–333. It found, however, that the evidence of the defendant's financial condition was relevant to this inquiry and so reversed the conviction.

Both *Poll* and *Wilson* seem to assume, without any analysis, that Section 7202 and the former Section 2707(c) require both a willful failure to account and a willful failure to pay over. I conclude, however, that when the issue is confronted directly, the only plausible reading of the plain language of the statute penalizes the failure to complete the duty imposed by law: truthfully accounting for and paying over the withholding tax collected by an employer. The alternative reading is inconsistent with any reasonable understanding of the purposes of the statute. It would result in a greater penalty for one who simply failed to collect trust fund taxes than for one who collect them and, as is charged here, used them for his own selfish purposes (arguably a more serious infraction), so long as he notified the IRS that he had collected the tax. That Congress intended to make such a distinction is simply inconceivable.

## VI. *STATUTE OF LIMITATIONS: SECTION 7212(A)*

■ Defendant argues that Count 33, charging a violation of 26 U.S.C. § 7212(a), should be dismissed because it alleges conduct which took place more than 3 years prior to the filing of the superseding indictment. The government responds that the applicable statute of limitations is six years, and that, in any event, part of the offense described in Count 33 occurred within 3 years of the filing of the superseding indictment.

The statute of limitations in criminal tax cases is found in 26 U.S.C. § 6531. It provides generally that criminal tax proceedings must be initiated within 3 years of the offense, unless the offense falls into one of eight exceptions providing for 6 year period. One of those exceptions appears to be specifically applicable here. It provides for a six year limitation period "for the offense described in section 7212(a) (relating to intimidation of officers and employees of the United States)." 26 U.S.C. § 6531(6).

Defendant contends that this provision does not apply here because the parenthetical language limits its scope only to those Section 7212(a) offenses involving intimidation of officers and employees of the United States. In support of this contention, defendant cites to an unpublished opinion in *United States v. Connell*, No. CR–F 94–5052 REC (E.D.Cal., February 6, 1995). In that case, the court held that a three year limitation period applied to Section 7212(a) offenses not involving intimidation. In reaching this conclusion the court appeared to assume that Section 6531(6) only applied to intimidation offenses. The government's argument, it seems, was that other paragraphs of Section 6531(6) also applied to bring the offense within the six year provision.

The government also relies on an unpublished decision, *United States v. Workinger*, CR No. 94–60023 (D.Or. January 11, 1995), for the proposition that Section 6531(6) does apply in this case. In *Workinger*, the court held that the parenthetical language in Section 6531(6) only serves as a shorthand for all of Section 7212(a). The court found that the word "relating" as used in the parenthetical language meant "to have connection or reference" and that the phrase "relating to intimidation of officers or employees of the United States" simply indicated that the statute to which the subsection referred did in fact relate to such acts.

■ I find that the latter interpretation is the better one. Parenthetical comments using the word "relating" are ordinarily used in statutes so that cross-references to other statutes are understandable to the reader. They do not ordinarily serve to limit the scope of the preceding language. This is apparent from the other use of a parenthetical in Section 6531. Section 6531(5) provides for a six year limitation period "for offenses described in sections 7206(1) and 7207 (relating to false statements and fraudulent documents)." This parenthetical language cannot be intended as limiting, because Sections 7206(1) and 7207 relate only to false statements and fraudulent documents. Section 7206(1) penalizes those who intentionally sign false statements under the pains and penal-

ties of perjury, while Section 7207 penalizes those who willfully furnish false documents or false information to the IRS. It thus seems clear that the parenthetical language in this statute is not intended to limit its scope, and that the six year limitation period applies to all actions under Section 7212(a).

## VII. *STATUTE OF LIMITATIONS: SECTION 7202*

■ Defendant also contends that the three year statute of limitations applies to Section 7202. The government responds that a six year limitation period is made applicable to Section 7202 by Section 6531(4), which provides for a six year limitation period "for the offense of willfully failing to pay any tax, or make any return ... at the time or times required by law or regulations."

This dispute centers on the meaning of the word "pay." Defendant contends that the word "pay," as used in Section 6531(4), is to be distinguished from the phrase "pay over," as used in Section 7202. The first, he contends, refers to the direct obligation of a taxpayer, while the second supposedly refers to the obligation of a collection agent, such as an employer obligated to collect and pay over withholding taxes.

Defendant finds support for his position in *United States v. Block*, 497 F.Supp. 629 (N.D.Ga.1980) *aff'd*, 660 F.2d 1086 (5th Cir. 1980). The court in that case analyzed the language of Section 6531 and noted that each of the enumerated exceptions to the general three year limitation period referred to specific statutory provisions or tracked the language of a particular criminal tax offense. Since Section 6531(4) tracked the language of Section 7203 (relating to the intentional failure to pay any tax or make any return) but did not follow the language of Section 7202 (relating to failure to collect or account for and pay over tax), the court concluded that Section 6531(4) was not intended to refer to Section 7202. The *Block* court also noted that Section 6531(4) refers only to "the of-

fense" of willfully failing to pay any tax or make any return. Since Section 7203 was "the offense" which criminalized these acts, the use of the singular in Section 6531(4) suggested that this was the only offense to which it referred.

The government's position is supported by *United States v. Porth*, 426 F.2d 519, 521–522 (10th Cir.), *cert. denied*, 400 U.S. 824, 91 S.Ct. 47, 27 L.Ed.2d 53 (1970), and *United States v. Musacchia*, 900 F.2d 493 (2nd Cir. 1990), *cert. denied*, 501 U.S. 1250, 111 S.Ct. 2887, 115 L.Ed.2d 1052 (1991). *Porth* merely asserts, without analysis, that Section 6531(4) applies to Section 7202 offenses and is of little assistance here.[6] In *Musacchia*, the court considered the argument put forth in *Block* and rejected it. *Musacchia*, 900 F.2d at 499–500. Two factors were determinative in *Musacchia*. First, the court relied upon the Supreme Court's use of the term "pay taxes" in *Slodov v. United States*, 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978). *Musacchia*, 900 F.2d at 500. In *Slodov*, the court held that the term "any person required to collect, truthfully account for, and pay over any tax" as used in 26 U.S.C. § 6672, the civil analogue to Section 7202, was meant to limit the applicability of the section to persons required to collect tax from third parties and pay it over to the government, and was not intended to limit its scope to persons who were personally in a position to perform all three functions in a particular firm. *Slodov*, 436 U.S. at 246–250, 98 S.Ct. at 1785–87. In particular, the Court stated that:

> [the limiting language] was necessary to insure that the penalty provided ... would be read as applicable only to failure to pay taxes which require collection, that is third-party taxes, and not failure to pay 'any tax imposed by this title,' which, of course, would include direct taxes.

*Id.* at 249, 98 S.Ct. at 1786. Since *Slodov* used the phrase "to pay" interchangeably with "pay over" as used in Section 6672, the court in *Musacchia* concluded that the terms

---

**6.** *Porth* also cites to a string of cases in support of its position. None of them, however, holds that Section 6531(4) applies to Section 7202 offenses. *See Waters v. United States*, 328 F.2d 739 (10th Cir.1964); *United States v. Gase*, 248

F.Supp. 704 (N.D.Ohio 1965); *United States v. Doelker*, 211 F.Supp. 663 (N.D.Ohio 1962); *United States v. Alper*, 200 F.Supp. 155 (D.N.J.1961); *United States v. Tiplitz*, 105 F.Supp. 512 (D.N.J. 1952).

must mean the same thing in Sections 6531 and 7202. The *Musacchia* court also concluded that it would be highly unlikely that Congress would have intended to impose a six year limitations period for offenses under Section 7203, a misdemeanor, and only a three year period for offenses under Section 7202, a felony.

I find defendant's argument more compelling. Section 6531(4) plainly refers only to a single offense, an offense which is clearly described by the language of Section 7203. The Supreme Court's use of the terms "pay" and "pay over" interchangeably in *Slodov* does not appear to have been intended to express an opinion about the meaning of these terms as used in the statutes at issue here. It appears rather to have been a stylistic choice, avoiding the need to use the awkward phrase "pay over" twice in one sentence.

In any event, Section 6531(4) refers to "the offense of willfully failing to pay any tax, or make any return." Section 7202 does not describe an offense of failing "to make any return" but rather of intentionally failing "to collect, account for, and pay over" tax. Thus even under the broader reading of "pay" in Section 6531(4), it still does not refer to the offense of failing to "collect" withholding tax described in Section 7202.

In sum, I find that Congress has expressed its will "in reasonably plain terms," *Negonsott*, 507 U.S. at 103–05, 113 S.Ct. at 1122–1123, and that Section 6531(4) applies only to "the offense" described in Section 7203. Notwithstanding any speculation as to Congress' motives in imposing a longer limitations period on a misdemeanor than on a felony, this plain reading of the statute is conclusive. *Id.* Accordingly, defendant's motion to dismiss Count 11, which charges a Section 7202 offense on July 31, 1992,[7] is **ALLOWED**.

## VIII. *CONCLUSION*

For the foregoing reasons, defendant's motion to dismiss Count 11 on statute of limitations grounds is **ALLOWED**. Defendant's

7. The indictment was filed on August 22, 1995.

remaining motions to dismiss are all **DENIED**.

**SO ORDERED.**