**Herman SOUTH, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 23314.**

United States Court of Appeals
Fifth Circuit.

Nov. 8, 1966.

---

11. See Restatement Second, Conflict of Laws (Tentative Draft No. 9, 1964) § 390(f).

12. Id. at §§ 391 and 379(a).

G. Richard Christ, Tampa, Fla., for appellant.

Edward F. Boardman, U. S. Atty., Tampa, Fla., Byron B. Kohn, Atty., Dept. of Justice, Washington, D. C., E. J. Salcines, Asst. U. S. Atty., Edward T. Joyce Atty., Dept. of Justice, for respondent.

Before BROWN, GEWIN and GOLDBERG, Circuit Judges.

GEWIN, Circuit Judge.

The appellant, Herman South, was convicted by a jury in the United States District Court for the Middle District of Florida on two counts of a three count indictment charging him with using interstate commerce, in this instance the United States Mails, with the intent to promote or facilitate illegal gambling activity in violation of Title 18 U.S.C. § 2 and § 1952.[1] He was accused of causing

---

1. Section 2 provides:
 "§ 2. Principals
 (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
 (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal. As amended Oct. 31, 1951, c. 655, § 17b, 65 Stat. 717."

Section 1952 provides in pertinent part as follows:
 "(a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to—
 * * * * *
 (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,
 and thereafter performs or attempts to perform any of the acts specified in

two checks to be sent from Florida to California by mail to promote or facilitate gambling activities which were in violation of Section 849.08 of the Florida Statutes, F.S.A. He was sentenced to five years in prison on each count; the sentences are to run concurrently. We reverse for the reasons hereinafter stated.

On May 27, 1963, a Mr. James Bishop was contacted in the Brass Rail bar in Tampa, Florida, and invited to engage in a poker game. After the Brass Rail closed, the bartender and Bishop proceeded to a private residence where appellant was present and engaged in a poker game for money. Bishop testified that during the course of the game he issued two checks, one for $92.00 and the other for $300.00, drawn on a California bank. The checks were made payable to cash and were given to South, who was acting as banker, in payment for chips with which to continue the game. Bishop had been drinking for a good part of the evening and he was uncertain whether the appellant won or lost, but he was positive that the bartender won and that he lost. The checks were endorsed by one Lillian Kolsky, and deposited in her account at the International Bank of Tampa the following day. In the normal course of collection, the checks were sent through the mails to the drawee California bank. There was no evidence di-rectly connecting Lillian Kolsky with the defendant.

The appellant argues that the district court committed error in admitting, over timely and appropriate objection, his income tax returns for the years 1962 and 1963. Both returns showed a reported income of $1,800.00 and three dependents were claimed, the appellant and his two sons. On his 1963 income tax return South stated that he was an outside salesman. On his 1962 return he declared that he was the owner of the Echo Lounge in Tampa. The government introduced the returns for the purpose of showing that South was engaged in a continuous business enterprise of gambling in violation of Florida law. The government's evidence showed that the gambling games were played with cards and were usually various types of poker. Persons so engaged are sometimes referred to as professional gamblers. It is argued that the amount of income reported on the returns was manifestly too small for the appellant and his two sons to live on, and therefore, he must have had income from illegal gambling sources.[2] The appellant contends that the returns in no way reflect on the question of whether he was a professional gambler, and that if anything they tend to establish that he was guilty of tax evasion in that he failed to report all of his taxable income for the two years in question.

---

subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

(b) As used in this section 'unlawful activity' means (1) any business enterprise involving gambling, liquor on which the Federal excise tax has not been paid, narcotics, or prostitution offenses in violation of the laws of the State in which they are committed or of the United States, * * * "

2. The following is from the trial transcript:
"THE COURT: Yes. I am allowing these Exhibits to be introduced into evidence not for the purpose of proving any other offense at all, purely for the purpose of [sic] which I think the Government is introducing them, that is, to show the actual income during this period of time reported. Is that correct?

"MR. BOARDMAN: That's right, may it please the Court.

"THE COURT: And for that purpose only, I will allow it. Now, if—

"MR. CHRIST: The ultimate limitation on it is to show whether or not the Defendant was engaged in gambling, am I correct?

"THE COURT: That's correct."
* * * * *

"THE COURT: The Court will admit both of those Exhibits purely for the purpose of showing Defendant's statement of his income during these two years as made to the Internal Revenue Department."

■ Entirely aside from anything disclosed or proved by South's income tax returns, the other evidence clearly established ample facts from which the jury could find that South was a professional gambler in violation of Florida law, which is an essential element necessary to support the government's charges against him. Prior to the introduction of the tax returns the government produced six witnesses who testified to having lost varying sums of money from several hundred to several thousand dollars in card games in which the appellant was an active participant. They also testified to ruthless tactics used by the appellant to insure that they lost in the games. An associate of the appellant who was then serving a prison sentence testified that he and others had been working with the appellant in the gambling business in a sort of "loose confederation" and that the winnings taken from those who were induced to participate in the gambling games were split among the confederates. The victims were referred to as "marks," "subjects" or "suckers."

We conclude that in the circumstances and under the facts here present a highly likely inference which the jury could certainly have drawn from the disclosures made by the income tax returns was that South had wilfully and unlawfully failed to report all of his income and was an income tax evader.

■■ Although evidence which tends to prove an unrelated offense is admissible when relevant to an issue in the case, Fernandez v. United States, 329 F.2d 899 (9 Cir. 1964); Cantrell v. United States, 116 U.S.App.D.C. 311, 323 F.2d 613 (1963); Weiss v. United States, 122 F.2d 675 (5 Cir. 1941), such evidence is inadmissible when it has no bearing on the offense of which the defendant is accused. Marko v. United States, 314 F.2d 595 (5 Cir. 1963); Fairbanks v. United States, 96 U.S.App.D.C. 345, 226 F.2d 251 (1955); Hartman v. United States, 215 F.2d 386 (8th Cir. 1954); 1 Wharton, Criminal Evidence § 232 (1955). Construing these returns in a manner most favorable to the government, we are unable to find that they constituted even the slightest evidence of any probative value tending to show that South was a professional gambler in violation of Florida law. The most favorable inference that can be drawn is that South must have had some other income during the two years in question. They disclose nothing which connects South with gambling. In the context in which they were admitted, the returns clearly indicated that the appellant had failed to report all of his income, and was guilty of income tax evasion. The government's purpose in introducing the returns to show that South had non-reported income strengthens the inference of tax evasion. An intimation of such an offense could only have inflamed the jury and prejudiced the defendant in their eyes. The government's insinuations when arguing before the jury that the returns were not truthful further drew the jury's attention to an irrelevant and extremely prejudicial accusation.[3] Marko v. United States, supra. We conclude that the returns failed to prove or tend to prove any essential element of the charges embraced within the indictment.

3. The following is from the District Attorney's argument:
"Then of course, we got into Walter McDaniel, the personal representative of the District Director of Internal Revenue, where he produced the income tax returns for 1962 and 1963. He got into a little hassle, but nevertheless there in black and white is documentary evidence of this man's income, at least what was reported."
\* \* \* \* \*
"And I'd like to just mention this: Maybe I didn't what we lawyers say, I guess 'publish to the jury,' but when you get in the Jury Room I am sure that some of you might be—have some interest to look at Exhibit No. 13, the income tax return for 1963, where it says, 'Outside salesman,' and in that setting, with this evidence in this case, 'Outside salesman,' the Defendant's tax return. That's right, the evidence shows he is an outside salesman."

Moreover, we are completely convinced that they tended to prove that South was guilty of another crime involving his failure to report his true income in violation of a totally unrelated statute.[4] Such evidence was highly prejudicial, and requires us to reverse the conviction.

 Nor do we feel that the Court's limiting instructions cured the defect and eliminated the prejudice. The limitation included in the Court's charge to the effect that certain evidence was to be considered only for the purpose of establishing that South was a professional gambler was general and made no reference to the tax returns. Since the returns did not tend to prove that South was a professional gambler, and since the instructions were vague and nonspecific as far as the returns were concerned, we cannot say with appreciable certainty that the error did not substantially sway the jury in assessing South's guilt. The highly prejudicial effect of intimation of tax evasion was not sufficiently eliminated to remove the error. Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); United States v. Clarke, 343 F.2d 90 (3 Cir. 1965); Mora v. United States, 190 F.2d 749 (5 Cir. 1951). We therefore conclude that the conviction must be reversed, and the case remanded for a new trial.

In view of our conclusion as to the admissibility of the tax returns, it is not necessary for us to pass on, and we do not pass on, the sufficiency of the evidence. The appellant makes a very strong argument that there is insufficient evidence to submit to the jury the issue of the appellant's use of interstate commerce. On re-trial the government may present more substantial evidence connecting the appellant with the use of a facility in interstate commerce.

Reversed and remanded.

4. In so finding, we reject the government's argument that even if the returns should not have been admitted, the error was harmless.