**Herman SOUTH, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 25924.**

United States Court of Appeals
Fifth Circuit.

June 24, 1969.

---

Arnold D. Levine, Tampa, Fla., for appellant.

Edward F. Boardman, U. S. Atty., Tampa, Fla., for appellee.

Before WISDOM and DYER, Circuit Judges, and KRENTZMAN, District Judge.

DYER, Circuit Judge:

South appeals from a judgment of conviction entered on a jury verdict finding him guilty of using or causing others to use the facilities of interstate commerce for the promotion of an unlawful gambling activity in violation of 18 U.S.C.A. §§ 2 and 1952. He urges reversal on the grounds that there was insufficient evidence to support his conviction, that the District Court incorrectly charged the jury concerning specific intent, that the Government wrongly refused to stipulate that he was a professional gambler, and that he was prejudiced by the inflammatory remarks made by counsel for the Government during closing argument. We reverse.

On the night of May 27, 1963, one Bishop was sitting in the Brass Rail cocktail lounge in Tampa, Florida, having a few drinks and talking to Bob the bartender. Bob introduced Bishop to South. Both had a keen interest in poker. South was a professional gambler who made his living by inducing suckers into a poker game in which South and other players working in concert with him would rig the game and split the amount lost by the sucker. Bishop, with the anodyne of a few drinks under his belt, believed that he was an unbeatable poker player. He was therefore a likely subject for South. Bishop, South, Bob and Kolsky, the owner of the Brass Rail, left the cocktail lounge and drove to a private home to play poker. Bob, South and Bishop played five card stud with South acting as banker. Bishop's euphoria was short lived. He began to lose and purchased more chips from South using blank checks which he thought were furnished by South. The checks were made out to cash and were drawn on the Security First National Bank of Lancaster, California. Bishop also gave one or more checks to Bob, but he remembered giving two particular checks, one for ninety-two dollars and one for three hundred dollars, to South. Bishop lost money in the game and Bob won money, but Bishop could not remember whether South won or lost. Three of the checks drawn by Bishop during the poker game, including the two given to South, were deposited in the International Bank of Tampa in an account maintained by Lillian Kolsky and endorsed by her but not by South. The checks were transmitted to the Security First National Bank through the usual clearing process. Two of the checks were returned because of insufficient funds in Bishop's account. When he became aware of this, Bishop called Bob at the Brass Rail and later Bishop went there and gave Bob cash for the checks. Bishop never talked with or saw South after the night of the game.

It was the Government's burden to prove that South had used or had caused another to use a facility of interstate commerce. This it failed to do. There is no direct evidence to support the conviction. South's name does not appear on either of the two checks purportedly given to him by Bishop, and his name does not appear on any of the bank records concerning the deposit and forwarding of the checks.

The Government's circumstantial case is no better. The Government proved that which South was eager to stipulate, i.e., that South was a professional gambler. In the process evidence was

presented to the jury which was not probative of the charges in the indictment but which was prejudicial to South. For example, Government witnesses repeatedly described South as a cheat. While this may be true, it has nothing to do with the issue of South's guilt or innocence of the charges upon which he was tried.

The only evidence the Government was able to present was that Bishop gave South two checks for chips. There was no evidence that Bob split his winnings with South, and there was no evidence that South gave the checks to Lillian Kolsky for deposit in her account. The test in circumstantial evidence cases is whether or not the jury could conclude that the inferences to be reasonably drawn from the evidence are consistent with the guilt of the accused and inconsistent with " * * * every reasonable hypothesis of his innocence." Harper v. United States, 5 Cir. 1969, 405 F.2d 185; Montoya v. United States, 5 Cir. 1968, 402 F.2d 847; O'Connell v. United States, 5 Cir. 1968, 402 F.2d 760; Vick v. United States, 5 Cir. 1954, 216 F.2d 228. Applying the *Vick* standard, we hold that the jury could not have properly resolved every reasonable hypothesis of innocence against South.

Turning now to the trial judge's instruction on intent, the indictment charges that South used or caused another to use a facility of interstate commerce "* * * with the intent to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of an unlawful activity * * *." The District Judge charged the jury on the element of intent as follows:

The acts which a defendant does may indicate a state of mind, that is, the intent to commit the offense charged. It is reasonable to infer that a person ordinarily knows and intends the natural and probable consequences of his act, *so unless the contrary appears from the evidence*, the jury may draw the inference that the accused intended all of the consequences which one standing in like circumstances, and possessing like knowledge should reasonably have expected to result from any acts knowingly done. (Emphasis supplied).

Defense counsel objected to this instruction. We held an almost identical charge to be error in Mann v. United States, 5 Cir. 1963, 319 F.2d 404, in which we pointed out that:

When the words, "So unless the contrary appears from the evidence" were introduced, the burden of proof was thereupon shifted from the prosecution to the defendant to prove lack of intent. If an inference from a fact or set of facts must be overcome with opposing evidence, then the inference becomes a presumption and places a burden on the accused to overcome that presumption. Such a burden is especially harmful when a person is required to overcome a presumption as to anything subjective, such as intent or wilfulness, and a barrier almost impossible to hurdle results.

Id. at 409. *See also,* Morissette v. United States, 1952, 342 U.S. 246, 275, 72 S.Ct. 240, 96 L.Ed. 288; Berkovitz v. United States, 5 Cir. 1954, 213 F.2d 468; Wardlaw v. United States, 5 Cir. 1953, 203 F.2d 844. The charge given here was erroneous.

This is the second time that South has been tried for the offenses charged in the case *sub judice.* We reversed the prior conviction.[1] Having found that there was insufficient evidence to sup-

---

1. On the first appeal, South v. United States, 5 Cir. 1966, 368 F.2d 202, while we did not rule on the sufficiency of the evidence we stated:

The appellant makes a very strong argument that there is insufficient evidence to submit to the jury the issue of the appellant's use of interstate commerce. On re-trial the government may present more substantial evidence connecting the appellant with the use of a facility in interstate commerce.

Id. at 206.

**700**

port the conviction, no good purpose would be served by ordering a third trial. See 28 U.S.C.A. § 2106; Watkins v. United States, 5 Cir. 1969, 409 F.2d 1382, [March 28, 1969]; Nagell v. United States, 5 Cir. 1968, 392 F.2d 934; Argent v. United States, 5 Cir. 1963, 325 F.2d 162.[2]

Reversed with directions to enter a judgment of acquittal.

2. In view of our disposition of the case we do not reach South's other contentions.