RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 10a0271p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————————

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

        *v.*                                         No. 09-1284

RICHARD BLANCHARD,
                *Defendant-Appellant.*

————————————

Appeal from the United States District Court
for the Eastern District of Michigan at Flint.
No. 05-80355-001—Sean F. Cox, District Judge.

Argued: August 5, 2010

Decided and Filed: August 30, 2010

Before: COLE and CLAY, Circuit Judges; KATZ, District Judge.[*]

————————————

## COUNSEL

**ARGUED:** Joan Ellerbusch Morgan, Sylvan Lake, Michigan, for Appellant. S. Robert Lyons, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Joan Ellerbusch Morgan, Sylvan Lake, Michigan, for Appellant. S. Robert Lyons, Alan Hechtkopf, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

————————————

## OPINION

————————————

COLE, Circuit Judge.    Appellant Richard Blanchard ("Blanchard") was convicted of fifteen counts of Failure to Account for and Pay Over Withholding and FICA Taxes, in violation of 26 U.S.C. § 7202, and three counts of Making and Causing

————————————

[*]The Honorable David A. Katz, United States District Judge for the Northern District of Ohio, sitting by designation.

the Making of a False Claim for a Tax Refund, in violation of 18 U.S.C. § 287. He was sentenced to a term of imprisonment of twenty-two months, plus thirty-six months of supervised release, restitution of $195,852.60, and a special assessment of $1,800. He now argues that (a) several of the § 7202 counts should have been dismissed because they are barred by a three-year statute of limitations; (b) that the district court erred in admitting evidence of his discretionary expenditures, which were unduly prejudicial; (c) that the court erred in failing to instruct the jury that an ability to pay the taxes due is an element of the offense under 8 U.S.C. § 7202; (d) that the court also erred in failing to instruct the jury on the defense theory of the case; and (e) that his convictions for violating § 287 must be vacated because they are not supported by sufficient evidence. In the alternative, he argues that resentencing is required because the district court erred in calculating the amount of restitution it imposed. For the reasons below, we **AFFIRM** Blanchard's conviction and sentence of imprisonment but **VACATE** the restitution order and **REMAND** for further proceedings consistent with this opinion.

## I. BACKGROUND

In early 2001, the Internal Revenue Service ("IRS") began a civil audit of R. Blanchard Construction Company ("the Company"); in 2002, the case became a criminal investigation. The investigation revealed that from 1997 to 2003, the Company had failed to pay $195,852.60 in employment taxes, but that the Blanchards had filed for and received tax refunds totaling $11,639.00. In addition, the investigation determined that Blanchard routinely had clients pay directly to him funds that were due the Company, which he then would deposit in his personal account without reporting them as business income. This resulted in an additional $23,533.00 in taxes owed but not paid over to the IRS.

On April 12, 2005, a twenty-three-count indictment was returned against Blanchard and his wife, Karen Blanchard. Counts one through five charged Income Tax Evasion, in violation of 26 U.S.C. § 7201.[1] Counts six through twenty charged Failure

---

[1] "Any person who wilfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall . . . be guilty of a felony . . . ." 26 U.S.C. § 7201.

to Account for and Pay Over Withholding and FICA Taxes, in violation of 26 U.S.C. § 7202.[2] Counts twenty-one through twenty-three charged Making and Causing the Making of a False Claim for a Tax Refund, in violation of 18 U.S.C. § 287.[3]

Before trial, the Blanchards brought motions to dismiss counts six through seventeen as time-barred by the limitations period set out in 26 U.S.C. § 6531, to sever the trial, and to exclude evidence regarding their discretionary spending and details of Blanchard's application to become a voluntary police officer. The district court denied the motions to dismiss and exclude the evidence regarding spending, but agreed to redact the records pertaining to Blanchard's application to become a police officer.

At trial, testimony was presented that Blanchard had begun an excavation business as a sole proprietorship in 1992, which he later incorporated as the R. Blanchard Construction Company. In March 1996, the Blanchards contracted with Paychex Incorporated to prepare payroll checks for the Company. Paychex also provided the Company with monthly tax notification-slips (detailing the amounts due to the IRS for social security, Medicare, and federal tax withholding) and quarterly Form 941 tax returns ("941 Forms") for the Company to file. Paychex's primary contact at the Company was Karen; Blanchard was the secondary contact. An employee of Paychex testified that she was not aware if Blanchard had ever received or reviewed any of the forms Paychex generated for the Company.

The Blanchards declined Paychex's tax payment service, which makes required payments to the IRS on behalf of clients. Accordingly, it was the Company's responsibility to make these payments. In the second, third, and fourth quarters of 1996, the Company filed the required 941 Forms and paid over to the IRS taxes withheld from

---

[2]"Any person required under this title to collect, account for, and pay over any tax imposed by this title who willfully fails to collect or truthfully account for and pay over such tax shall . . . be guilty of a felony . . . ." 26 U.S.C. § 7202.

[3]"Whoever makes or presents to any person or officer in the civil, military, or naval service of the United States, or to any department or agency thereof, any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent, shall be imprisoned not more than five years and shall be subject to a fine in the amount provided in this title." 18 U.S.C. § 287.

employees' paychecks, but did not do so from the first quarter of 1997 until the third quarter of 2002. That quarter, the Company filed a return and paid over withheld taxes, but again failed to do so the next quarter.

In 1998, Kathryn Fox, an external accountant the Blanchards had retained to prepare the Company's annual income-tax returns, became aware of the delinquency in paying over to the IRS the withheld taxes and informed Karen that these amounts needed to be paid. In Fox's recollection, this issue "would come up every year. I mean, when they brought the paperwork in. Say, you know, this needs to be paid. Then, you know, I didn't really get an explanation as to why they weren't paid." (R.157, Trial Tr. Aug. 15, 2007, at 526.) Karen was Fox's primary contact, but Fox recalled discussing the problem directly with Blanchard in April 2000. When Fox informed him that the amount of payroll taxes owed the government was about $100,000, he responded that "it was more like $200,000," that "he hoped that they didn't take his equipment because he had a big job that he hoped would help towards paying the tax," and that "he had retained an attorney to help him deal[] with it." (*Id.*) Accordingly, Fox assumed that Blanchard was addressing the issue with the assistance of an attorney, and only became aware in 2002 when approached by the IRS investigator that the Company was not only delinquent in its taxes, but also had not been filing any 941 Forms. She also was not told about the payments customers made directly to Blanchard, resulting in this income not being reported on the tax returns she prepared on his behalf.

In 1999, Joseph Amon, a construction manager at another firm, was hired to help the Blanchards keep better track of the internal accounting records of the Company. As part of this work, which lasted for about a year, Amon trained Karen on how to use the accounting software he installed. He testified that he and Blanchard discussed the delinquent federal withholding taxes "a couple times," as well as the 941 Forms, although the latter was "more with Karen." (R.154, Trial Tr. Aug. 10, 2007, at 125.) Amon urged Blanchard to address the tax situation, but for Blanchard, paying the IRS debt was "at the bottom of the list." (*Id.* at 127-29.) Amon also suggested that Blanchard "sell off some of the equipment to pay some of the bills such as the taxes,"

but these suggestions "weren't always received well." (*Id.* at 128.) Amon was not aware of any withheld taxes being paid over to the IRS while he worked for the company.

For his part, Blanchard testified that he left the financial end of the business to Karen because he did not have any background in accounting and found the math confusing. He claimed that he never dealt with Paychex and recalled meeting Fox only once, at the time the company was incorporated. He also recalled speaking with her once on the telephone, but denied reviewing any tax returns with her or discussing the amount of taxes due the government; rather, "it was [his] understanding that between the attorneys that [he] had at the time that things were being taken care of." (R. 163, Trial Tr. Aug. 17, 2007, at 779-80.) He denied at any point stating that he owed the IRS $200,000 in withheld taxes.

Because he was not involved with the financial aspects of the business, Blanchard testified, he did not realize "for a long time that taxes had to be paid by the quarter." (*Id.* at 801-02.) He acknowledged, however, that Karen eventually brought the problem to his attention. In his words, "[s]he maybe mentioned at one time that we had some taxes that needed to be paid . . . and it was with the understanding that when the next check came in that it would be caught up." (*Id.* at 802.) According to Blanchard, Karen never mentioned the issue again, so he assumed that she had paid the delinquent taxes. Blanchard also conceded that at one point he had seen a list of bills prepared by Amon that he recognized had to be paid immediately. While he signed his own tax returns each year, he denied ever reviewing them.

While the corporation often had insufficient funds to pay wages—such that he often had to delay cashing his own paychecks and once had to use $30,000 of the equity in his home to pay a corporate debt that was due—Blanchard continued to pay the same wages to employees, his wife, and himself without paying over withheld payroll taxes to the IRS. At the same time, the Blanchards used funds from their personal bank account and the company's corporate account to make discretionary purchases, including taking a family vacation in Florida (which Blanchard testified he believed was paid for

by his mother-in-law); leasing two Cadillac automobiles (paid for by Karen); buying jewelry, firearms, and a CD player; and engaging in recreational gambling that, according to records produced at trial, resulted in annual losses ranging from approximately $1,500 in 2000 to $20,000 in 2002.

On August 22, 2007, the jury returned a verdict of not guilty on counts one through five (the charges under 26 U.S.C. § 7201) and guilty on counts six through twenty-three (the charges under 26 U.S.C. § 7202 and 18 U.S.C. § 287). Blanchard moved for a new trial and a judgment of acquittal pursuant to Federal Rules of Criminal Procedure 29 and 33, arguing that insufficient evidence supported his convictions on counts 21 through 23 (the violations of 18 U.S.C. § 287), that the court's instructions to the jury had been confusing and erroneous, and that the court had erred in denying his motion to dismiss counts six through seventeen as time-barred. The court denied this motion. On February 11, 2009, the court sentenced Blanchard to a term of imprisonment of twenty-two months, plus thirty-six months of supervised release. Pursuant to 18 U.S.C. § 3663, the court also imposed restitution of $195,852.60, as well as a special assessment of $1,800.

Blanchard now appeals.

## II. ANALYSIS

### A. Limitations period for offenses under 26 U.S.C. § 7202

Blanchard argues that counts 6 through 17 of the indictment, charging him with violating § 7202 for failing to truthfully account for and pay over taxes from March 31, 1999 through January 31, 2002, must be dismissed because they are time-barred by the three-year limitations period under 26 U.S.C. § 6531. The applicability of a statute of limitations is a question of statutory interpretation that we review de novo. *See SEC v. Mohn*, 465 F.3d 647, 650 (6th Cir. 2006).

Blanchard contends that we should look to versions of 26 U.S.C. §§ 6531 and 7202 enacted in 1939 in order to interpret the current version of the statutory text. While the Government has argued persuasively that the evolution of the statutory scheme

supports the rejection of Blanchard's interpretation, the language of the current statute provides the starting point and the ending point of our analysis if the plain meaning of that language is clear. *See Chrysler Corp v. Comm'r of Internal Revenue*, 436 F.3d 644, 654 (6th Cir. 2006). Only when the plain language results in ambiguity or leads to an unreasonable result do we look to the statute's legislative history. *Id.* Because we find that the plain language of § 6531 supports the application of a six-year period of limitations, we need not consider Blanchard's arguments regarding prior iterations of the statute.

Section 7202 provides that "any person required under this title to collect, account for, and pay over any tax imposed by this title who willfully fails to collect or truthfully account for and pay over such tax" shall be guilty of a felony. 26 U.S.C. § 7202. The periods of limitation for prosecuting a violation of the tax laws are set out in § 6531, which provides in relevant part:

> No person shall be prosecuted, tried, or punished for any of the various offenses arising under the internal revenue laws unless the indictment is found or the information instituted within 3 years next after the commission of the offense, except that the period of limitation shall be 6 years--
>
>         . . .
>
> **(4)** for the offense of willfully failing to pay any tax, or make any return . . . at the time or times required by law or regulations . . . .

26 U.S.C. § 6531. Blanchard argues that a willful failure "to pay over" withheld tax is different than a willful failure "to pay" tax, and therefore the six-year limitations period under § 6531(4) does not apply to violations of § 7202.

Two district courts have found that offenses under § 7202 are not subject to § 6531(4)'s longer limitations period. *See United States v. Brennick*, 908 F. Supp. 1004 (D. Mass 1995); *United States v. Block*, 497 F. Supp. 629 (N.D. Ga. 1980). These courts argue that each of the enumerated exceptions to the three-year limitations period in § 6531 tracks the language of a particular criminal offense set out in § 7201 and following sections. *See Brennick*, 908 F. Supp. at 1018; *Block*, 497 F. Supp. at 632. For

instance, the court in *Brennick* argued, *see* 908 F. Supp. at 1018, that the language in § 6531(4) regarding "failing to pay any tax, or make any return" seems to correspond to the language in § 7203 providing that it is a misdemeanor for "[a]ny person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return, keep any records, or supply any information" to "willfully fail[] to pay such estimated tax or tax, make such return, keep such records, or supply such information."  26 U.S.C. § 7203.  By contrast, "the key words of [§] 7202, 'collect, account for, and pay over' are entirely absent from the subsections of [§] 6531 which establish the longer six-year period of limitations." *Block*, 497 F. Supp. at 632.  Thus, "it seems unlikely . . . that Congress [would] omit use of the key words of [§] 7202 if it had intended to make a failure to 'pay over' third-party taxes subject to the six-year statute of limitations."  *Id.*  Moreover, the two courts argue, § 6531(4) refers to an "offense," not "offenses," suggesting that Congress had in mind a particular violation.  *See Brennick*, 908 F. Supp. at 1019; *Block*, 497 F. Supp. at 632.

By contrast, all of the circuit courts to have considered this question have held that the six-year limitations period applies.  *See United States v. Adam*, 296 F.3d 327, 332 (5th Cir. 2002); *United States v. Gilbert*, 266 F.3d 1180, 1186 (9th Cir. 2001); *United States v. Gollapudi*, 130 F.3d 66, 70 (3d Cir. 1997); *United States v. Musacchia*, 900 F.2d 493, 499-500 (2d Cir. 1990), *vacated in part on other grounds*, 955 F.2d 3 (1991), *reaff'd*, *United States v. Evangelista*, 122 F.3d 112, 119 (2d Cir. 1997); *United States v. Porth*, 426 F.2d 519, 521-22 (10th Cir. 1970).  Our sister circuits have looked to the plain language of § 6531 in concluding that a willful failure "to pay" taxes includes a willful failure "to pay over" withheld taxes.  In the words of the Third Circuit,

> [u]nder a plain reading of this statute, we find it clear that violations of § 7202 are subject to a six-year statute of limitations under § 6531(4). Specifically, 26 U.S.C. § 7202 makes it an offense for an employer to willfully fail to "account for and pay over" to the IRS taxes withheld from employees.  Given that § 6531 pertains to "failing to pay any tax," the District Court correctly found that the failure to pay third-party taxes as covered by § 7202 constitutes failure to pay "any tax," and thus, is subject to the six-year statute of limitations under § 6531(4).

*Gollapudi*, 130 F.3d at 70.   The Third Circuit also reasoned that "it would be inconsistent for Congress to have prescribed a six-year limitation period for the misdemeanor offense defined in 26 U.S.C. § 7203 . . . while providing only a three-year limitation period for the felony offense defined in § 7202." *Id.* at 71. *But cf. id.* at 75 (Cowen, J., dissenting) (arguing that a longer limitations period for § 7203 offenses may be explained by the greater difficulty involved in uncovering them).

The rationale offered in *Brennick* and *Block* might be more persuasive if the language of § 6531(4) better matched that of § 7203.   However, several actions criminalized under § 7203—including the willful failure to keep required records or supply required information—are not listed under § 6531(4).   In the absence of a more perfect correspondence between § 6531(4) and § 7203, we hesitate to create an inter-circuit split on this issue.   Moreover, we find the Third Circuit's reasoning convincing. The scope of "willfully failing to pay any tax" under § 6531(4) plainly encompasses the offense of "willfully failing to pay over a tax" under § 7202, and it indeed would be odd for Congress to have imposed a longer limitations period for misdemeanor offenses under § 7203 than for felony offenses under § 7202.   Accordingly, we hold that offenses under § 7202 are covered by § 6531(4)'s six-year limitations period.

### B.  Admission of evidence regarding discretionary expenditures

Blanchard next argues that the district court erred in denying his motions in limine to exclude evidence regarding his discretionary spending, including records of leasing two Cadillac automobiles, gambling losses at the MGM Grand Casino in Detroit, and the purchase of firearms and a CD player.   We review the district court's decision to admit evidence for an abuse of discretion. *See United States v. Dietz*, 577 F.3d 672, 688 (6th Cir. 2009).   The district court's discretion in balancing the probative value of evidence against its potential for unfair prejudice is very broad; indeed, we have emphasized that, "'[i]f judicial self-restraint is ever desirable, it is when a Rule 403 analysis of a trial court is reviewed by an appellate tribunal.'" *Id.* at 689 (quoting *United States v. Zipkin*, 729 F.2d 384, 390 (6th Cir. 1984)).   Consequently, when reviewing for an abuse of discretion, we view "'the evidence in the light most favorable to its

proponent, giving the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value.'" *Id.* at 688 (quoting *United States v. Jackson*, 473 F.3d 660, 668 (6th Cir. 2007)). The prejudice to be weighed "is the unfair prejudice caused by admission of the evidence. Evidence that is prejudicial only in the sense that it paints the defendant in a bad light is not unfairly prejudicial." *Id.* (internal quotation marks omitted).

Blanchard's argument to the contrary notwithstanding, evidence regarding a defendant's ability to pay taxes is pertinent to whether an offense has been committed under § 7202, since it bears on the willfulness of the defendant's failure to pay over withheld tax to the government. If a defendant has made discretionary purchases in lieu of meeting his tax obligations, this is probative of his guilt.[4] While Blanchard contends that the evidence presented was of limited utility in this regard—since the gambling records over-represented the amount of money he gambled and the other expenses demonstrated that he had a "lower middle class standard of living"—these considerations go to the weight of the evidence, not its admissibility.

Blanchard also argues that admission of the gambling evidence created a "manifest danger of undue prejudice," given its potential to confuse the jury and the risk that members of the jury had negative views of the propriety and morality of gambling. At trial, however, Blanchard's counsel argued at length that the gambling records did not accurately reflect the amount of money Blanchard had lost, alleviating the concern that the jury might have been confused by the higher amount reflected in the casino records. And while there is some possibility that jurors may have had negative opinions regarding gambling, it is difficult to conclude that the district court abused its considerable discretion in admitting this evidence. *Dietz*, 577 F.3d at 688. Giving the gambling records their "maximum reasonable probative force" and "minimum reasonable prejudicial value," the relevance of Blanchard's spending a comparatively large amount

---

[4]Indeed, Blanchard's argument that this evidence is not relevant is difficult to reconcile with his contention that a defendant's inability to pay taxes when they are due is an element of the offense under § 7202. *See* Section II.C, *infra*.

of money on his own entertainment in lieu of paying over taxes to the IRS substantially outweighs the potential for prejudice arising from admission of this evidence.

The cases that Blanchard cites in support of his position are readily distinguishable, as the evidence in those cases had no bearing on the elements of the offense charged. *See United States v. Masters*, 450 F.2d 866, 867 (9th Cir. 1971) (testimony that defendant occasionally smoked marijuana had no bearing on charge of aiding and abetting a marijuana smuggling scheme); *United States v. Dean*, 435 F.2d 1, 2 (6th Cir. 1970) (defendant's possession of $5,000 in genuine currency served only to "give color" to the charge of possessing and passing counterfeit notes); *South v. United States*, 368 F.2d 202, 205-06 (5th Cir. 1966) (admission of tax returns had no bearing on the charge of using interstate commerce to promote or facilitate illegal gambling). By contrast, in cases where evidence of gambling is probative of the commission of the crime, courts routinely admit such evidence, albeit while evincing some concern as to its prejudicial effect. *See, e.g.*, *United States v. Griffin*, 524 F.3d 71, 82 (1st Cir. 2008) (upholding admission of evidence of gambling and other spending as highly probative as to whether the defendant's tax returns were false and noting the district court issued cautionary instructions regarding the gambling evidence, "which held the greatest potential to prejudice the defendant unfairly"); *United States v. Jackson-Randolph*, 282 F.3d 369, 376-79 (6th Cir. 2002) (admitting evidence of extensive gambling and other lavish spending as relevant to the defendant's need to commit fraud but noting that "appeals to class prejudice are highly improper and cannot be condoned"); *United States v. Abodeely*, 801 F.2d 1020, 1026 (8th Cir. 1986) (upholding admission of gambling activity in tax evasion case which, "while having less direct probative value" than evidence regarding income from prostitution, also was "much less prejudicial," since, "having been shown that [the defendant] ran a bar and a brothel, even the most straightlaced Iowa jury could hardly have been adversely affected by a showing of his participation in the legal, though perhaps sinful and worldly in the eyes of a midwestern jury, activity of gambling").

Accordingly, we find the district court did not err in admitting this evidence.

**C.     Failure to instruct the jury that an ability to pay is an element of 8 U.S.C. § 7202**

At trial, Blanchard's counsel asked the court to instruct the jury that, in order to establish that an offense had been committed under § 7202, the Government had to demonstrate beyond a reasonable doubt that the defendant (1) had a duty to truthfully account for and pay over federal income tax withheld from employees' wages, (2) failed to account for truthfully and to pay over these taxes, (3) acted willfully, and (4) at the time the taxes were due either (i) possessed sufficient funds to meet this obligation or (ii) lacked such funds because of a voluntary and intentional act without justification. The district court accepted the Government's argument that an inability to pay taxes on the date they are due is pertinent to the third element of the offense, the willfulness of the act, but is not itself an element of the offense that the Government must prove beyond a reasonable doubt.   Blanchard now challenges this decision.  We review the legal accuracy of jury instructions de novo. *United States v. Simons*, 150 F. App'x 428, 435 (6th Cir. 2005) (citing *United States v. Maliszewski*, 161 F.3d 992, 1014 (6th Cir. 1998)).

Blanchard principally relies on *United States v. Poll*, 521 F.2d 329 (9th Cir. 1975), in which the Ninth Circuit, reasoning that willfulness under § 7202 must include "some element of evil motive and want of justification," held that "to establish willfulness the Government must establish beyond a reasonable doubt that at the time payment was due the taxpayer possessed sufficient funds to enable him to meet his obligations or that the lack of sufficient funds . . . was created by . . . a voluntary and intentional act without justification." *Id.* at 333.  However, as the Ninth Circuit recently recognized in a case rejecting the argument Blanchard makes here, the evil motive requirement on which *Poll* rests is inconsistent with the Supreme Court's later decision in *United States v. Pomponio*, 429 U.S. 10 (1976).  *See United States v. Easterday*, 564 F.3d 1004, 1008 (9th Cir. 2009) (noting that the "evil motive" formulation of willfulness was "repudiated" in *Pomponio*).  Accordingly, "insofar as *Poll* may be interpreted as requiring the government . . . to prove that defendant had the money to pay taxes when due . . . *Poll* is inconsistent with *Pomponio*." *Id.* at 1010.  Under the Supreme Court's

decision, "willfulness" "simply means a *voluntary, intentional* violation of a known legal duty." *Pomponio*, 429 U.S. at 1012. Thus, in order to secure a conviction under § 7202, the Government must demonstrate that such a violation occurred, but there is no additional requirement that it show beyond a reasonable doubt that a defendant has sufficient funds to meet his obligations.

The Ninth Circuit went on to argue that requiring the Government to prove this element "is also inconsistent with common sense, for we think it unlikely that . . . a defendant could succeed in arguing that he did not willfully fail to pay because he spent the money on something else." 564 F.3d at 1010; *see also United States v. Evangelista*, 122 F.3d 112, 119 (2d Cir. 1997) (rejecting argument that defendants were entitled to a jury instruction that the Government had to prove they had sufficient funds to meet their legal obligations when the defendants had spent their funds on luxury items). In *United States v. Ausmus*, 774 F.2d 722, 724 (6th Cir. 1985), we adopted similar reasoning in holding that it was not error for the district court to instruct the jury that a defendant's financial ability to pay federal income taxes was not a defense under 26 U.S.C. § 7203. The district court had instructed the jury:

> The defendant asserts that his failure to pay his taxes . . . was not willful because he did not have enough money to pay them. However, every United States citizen has an obligation to pay his income tax when it comes due. A taxpayer is obligated to conduct his financial affairs in such a way that he has cash available to satisfy his tax obligations on time. As a general rule, financial inability to pay the tax when it comes due is not a defense to criminal liability for willfully failing to pay income taxes.

*Id.* While *Ausmus* is distinguishable, both factually (the defendant there admitted to intentionally spending his income in order to prevent the IRS from seizing it) and legally (the defendant was charged with violating § 7203, not § 7202), our holding that an inability to pay taxes when due generally is not a defense—let alone an affirmative element the Government has to prove beyond a reasonable doubt—further weighs against Blanchard's claim.

Consequently, we find no error here. While a defendant's inability to pay taxes when due bears on the willfulness of his act, it is not an element of the offense under 26 U.S.C. § 7202.

### D. Failure to instruct the jury on the defense's theory of the case

Blanchard's counsel also proposed several other instructions, detailing the defense's theory of the case. For the violations of 26 U.S.C. § 7202, the proposed instruction read:

> That concludes the part of my instructions explaining the elements of the crimes alleged in Counts 6 through 20. Next I will explain the defendant's position.
> The defendant states that he did not act willfully but acted and believed in good faith. Defendant asserts that he was unaware that employment tax returns were not filed and that employment tax returns had not been fully paid. Defendant disclosed the failures to his accountant / return preparer and believed that they had been dealt with. He asserts that the filing and payment of Michigan withholding on the same wages demonstrates his good faith and lack of willfulness.

Similarly, counsel's proposed instruction for the violations of 18 U.S.C. § 287 also stated Blanchard's position that he had acted in good faith:

> That concludes the part of my instructions explaining the elements of the false claim crime. Next I will explain the defendant's position.
> The defendant states that he did not act willfully and did not knowingly submit false claims. He asserts that he relied upon his accountant / return preparer, who knew that employment taxes had not been paid over to the Internal Revenue Service on behalf of R. Blanchard Construction Company and who prepared each individual income tax return claiming a refund, using information provided, following instructions provided by the Internal Revenue Service and using Forms W-2 which the payroll service had prepared.

The district court declined to offer these instructions, reasoning that they did not instruct the jury on a legal theory distinct from its instruction on willfulness, but rather represented Blanchard's view of the facts of the case. Blanchard now claims this decision was in error.

We review the district court's refusal to give a proposed jury instruction for an abuse of discretion.  *United States v. Adams*, 583 F.3d 457, 468-69 (6th Cir. 2009). Refusal is considered reversible error only if the instruction "is (1) correct, (2) not substantially covered by the actual jury charge, and (3) so important that failure to give it substantially impairs defendant's defense." *United States v. Heath*, 525 F.3d 451, 456 (6th Cir. 2008) (internal quotation marks omitted).  We therefore will reverse a judgment based on a claim of error "only if the instructions, viewed as a whole, were confusing, misleading and prejudicial." *Id.* (internal quotation marks omitted).

We find that the proposed instructions were substantially covered by the actual jury charge.  The legal theory animating Blanchard's proposed instructions is that he did not knowingly or willfully violate 18 U.S.C. § 287 or 26 U.S.C. § 7202, but rather acted in good faith.  The court's instructions on mens rea were clear:

> The word willfully means a voluntary, intentional violation of a known legal duty.  In other words, the Defendant must have acted voluntarily and intentionally and with a specific intent to do something the law forbids.  That is to say with a purpose either to disobey or to disregard the law.  And omission or a failure to act is willfully done if it's done voluntarily and intentionally and with the specific intent to fail to do something the law requires to be done.  That is to say with a purpose either to disobey or disregard the law.  In determining the issue of willfulness you are entitled to consider anything done or admitted to be done by the Defendant and all facts and circumstances in evidence that may aid in the determination of his state of mind.

(R. 160, Trial Tr. Aug. 21, 2007, at 1114-15 (§ 7202 instruction); *see also id.* at 1121 ("The term knowing means voluntary [sic] and intentionally and not because of mistake or some other reason.") (§ 287 instruction).)  The same is true of the court's instruction on good faith:

> The good faith of the defendant is a complete defense to the tax charges in the indictment because good faith is inconsistent with willfully failing to account for and pay over employment taxes.  While the term good faith has no precise definition it means among other things an honest belief that is subjectively held, a lack of malice, and the intent to perform all lawful obligations.  A person who acts on a belief or on an opinion honestly held is not punishable under this statute merely because

that honest belief turns out to be incorrect or wrong.  The tax laws are subject to criminal punishment only for those people who willfully fail to account for and pay over employment taxes. . . .  In determining whether or not the Government has proved that the defendant willfully failed to account for and pay over employment taxes or whether the Defendant acted in good faith the jury must consider all of the evidence received in the case bearing on the Defendant's state of mind.  The burden of proving good faith . . . does not rest with the Defendant because the Defendant has no obligation to prove anything to you.  The Government has the burden of proving to you beyond a reasonable doubt that the Defendant acted willfully.

(*Id.* at 1115-17 (§ 7202 instruction); *id.* at 1121-22 (§ 287 instruction).)

The court also emphasized that, under § 7202, "[i]n considering the Defendant's intent and whether or not he acted in good faith negating willfulness, you may consider Defendant's action in filling [sic] state withholding tax returns with full payment." (*Id.* at 1115-16.)  Even though it found that an ability to pay taxes when due was not a separate element of a § 7202 offense, the court further instructed the jury that "[t]he good faith belief subjectively held by the Defendant that at the time payment was due that he lacked sufficient funds to enable him to meet his obligation to pay employment taxes may be considered by you in determining if the Defendant acted willfully." (*Id.* at  1117.)  Similarly, in the § 287 instruction on good faith, the court emphasized that "[p]roof of intent is negated where it is established that a Defendant relied in good faith upon the advice and actions of a qualified tax preparer or professional after disclosure of all information in submitting a tax return or tax returns claiming a refund or refunds." (*Id.* at 1122.)

These instructions substantially covered the legal arguments set out in Blanchard's proposed jury instructions.  While the district court did not cover a few details that were contained in the instructions—for instance, in the § 7202 instruction, that the defendant had disclosed his late returns to his accountant—these details represent Blanchard's view of the facts, which the court was under no obligation to present to the jury. *See United States v. Vassar*, 346 F. App'x 17, 26 (6th Cir. 2009)

(citing *United States v. Chowdhury*, 169 F.3d 402, 407 (6th Cir. 1999)).  In sum, there was no error here.[5]

### E. Sufficiency of the evidence under 18 U.S.C. § 287

Blanchard next claims that there was insufficient evidence to support his convictions under § 287.  After his trial, he sought a judgment of acquittal on this ground, which the district court denied.  We review de novo the denial of a motion for acquittal based on sufficiency of the evidence.  *United States v. Acierno*, 579 F.3d 694, 698 (6th Cir. 2009).  The district court's decision must be affirmed "if the evidence, viewed in the light most favorable to the government, would allow a rational trier of fact to find the defendant guilty beyond a reasonable doubt."  *Id.* (internal quotation marks omitted).  "The appellate court must view all evidence and resolve all reasonable inferences in favor of the government," but may not "independently weigh the evidence nor substitute its judgment for that of the jury."  *Id.* at 699 (internal quotation marks omitted) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  "This standard is a great obstacle to overcome, and presents the appellant in a criminal case with a very heavy burden."  *Id.* (internal quotation marks omitted).

Blanchard argues that evidence presented at trial demonstrated that the Company paid him only net wages.  As a result, he claims, he was entitled to claim a tax credit on his tax return whether or not he knew that the Company never paid over the withheld taxes to the IRS, since, "[o]nce net wages are paid to the employee, the taxes withheld are credited to the employee regardless of whether they are paid by the employer, so that the IRS has recourse only against their employer for their payment."  *Slodov v. United States*, 436 U.S. 238, 243 (1978).  By consequence, he argues, the district court should have granted a judgment of acquittal because it was "a legal impossibility" for him to have made a false claim regarding the withheld tax.

---

[5]Blanchard also claims that the district court erred in refusing to give his proposed instructions for the charges in counts one to five under § 7201.  Since he was acquitted of these charges, any such error is harmless.

Blanchard draws support for this argument from *United States v. Creamer*, 370 F. Supp. 2d 715 (N.D. Ill. 2005), *vacated in part on other grounds*, No. 04 CR 281-1, 2006 WL 2037326 (N.D. Ill. Apr. 4, 2006).  The defendant in that case—who was the employee, the employer, and the person responsible for paying over withheld taxes to the IRS—was charged under 26 U.S.C. § 7206 with submitting false personal tax returns.  *Id.* at 733.  Even though evidence was introduced that the defendant knew the returns he filed in his personal capacity were incorrect, since he had never paid over the withheld funds to the IRS in his official capacity, the court found that he could not be convicted under § 7206.  *Id.* at 734.  In the court's eyes, such a result would "confuse[] the different capacities in which defendant allegedly acted. . . . The failure to pay over is by the employer.  The employee, without any reference to his knowledge, is entitled to the credit if the tax has been withheld."  *Id.*

The Third Circuit reached the opposite conclusion in *Gollapudi.*  The defendant, charged under § 7206 with filing a false personal tax return, argued inter alia that the return was technically correct, even though he (in his official capacity as president of his company) had never paid over the funds to the IRS.  *See* 130 F.3d at 68, 72.  Rejecting the argument that the technical accuracy of the information on a tax return is a complete defense, the Third Circuit concluded that there was "ample" evidence to find that the defendant had filed a false return, including testimony that the defendant admitted that the forms were false and that the alleged withholding was never submitted to the IRS, but rather was left in the corporate checking account.  *Id.* at 72.  Thus, the court held, the defendant had violated § 7206, "in that he misstated the amount of his withholdings. Despite the fact that he understood his obligations, he submitted a form which he did not believe was true and accurate as to every material matter."  *Id.*

Similarly, in *United States v. May*, 174 F. App'x 877 (6th Cir. 2006), we held that there was sufficient evidence to convict the defendant for tax evasion under § 7201. In *May*, the defendant operated and controlled the finances of Maranatha, a company in which he was the majority shareholder and president.  *Id.* at 878.  Although he filed individual income tax returns, May failed to pay over the taxes he reported withholding

from his own salary and that of his employees; instead, the funds remained in the corporate bank account. *Id.* Nonetheless, he argued that the evidence at trial was insufficient for a conviction for tax evasion, pointing to pay stubs (produced by Paychex) that showed taxes had been deducted from his wages. *Id.* at 879.

Acknowledging that an employee properly may credit taxes when they are actually withheld from his wages, even if the company does not subsequently pay them over to the IRS, we held that sufficient evidence had been presented that the wages were not "actually withheld" from the defendant:

> Evidence at trial . . . established that neither Paychex nor May, acting on behalf of Maranatha, actually withheld the taxes from May's wages. May gave Paychex funds covering only the employees' wages; Paychex never received or possessed the gross pay sums. May, moreover, retained those corporate funds (the difference between the gross and net pay due employees) in Maranatha's corporate bank account, an account May personally controlled and accessed for personal expenditures. Because the evidence supports a finding that May did not actually withhold the taxes from his wages as reflected on his Paychex pay stub, May cannot claim a credit for those taxes.

*Id.* Accordingly, we affirmed the district court's denial of the defendant's motion for a judgment of acquittal. *Id.*

Although *May* is an unpublished decision and involves a conviction for tax evasion under § 7201, not a conviction for making a false claim for a tax refund under § 287, we find its reasoning persuasive. Rather than creating an overly formalistic division between the personal and official capacities of an individual operating as both employer and employee, which would permit the corporate form to serve as a shield to individual liability, we find it more consonant with the purposes of § 287 to conduct a functional inquiry into whether funds due the government left the defendant's control and so may be deemed "actually withheld" from his wages. *See id.* Here, like in *May*, considerable evidence was presented to indicate that the funds remained in Blanchard's control. As the district court reasoned in denying Blanchard's motion for a judgment of acquittal:

> Like May, Defendant Richard Blanchard controlled and operated the company that was his employer, R. Blanchard Construction, Inc. Defendant Blanchard, like May, also utilized Paychex, a payroll processing company, to prepare the company's employees' paychecks. Also like May, Blanchard affirmatively refused to allow Paychex to handle the payment of taxes and provided Paychex with only the net pay of his employees. As a result of this payroll processing arrangement, the corporate funds allegedly representing the withholdings remained in the corporate accounts that were controlled by defendants May and Blanchard, respectively. Also just like in *May*, Defendant then used these funds for personal expenditures.

(R. 132, Order Den. Mot. for New Trial and Mot. for J. of Acquittal After Return of Jury Verdict.) By consequence, we find that the funds due the IRS were not "actually withheld" from Blanchard's wages, and so he cannot escape liability on this basis.

While Blanchard argues that his testimony that he had no involvement with the financial side of the business demonstrates that he did not knowingly file a false claim, the jury was free to reject this testimony as incredible and instead credit the testimony of Fox and Amon that he was well aware of the delinquent taxes when he filed his tax returns. Similarly, although Blanchard argues that the jury could not reasonably have found that he knowingly claimed false claims because he relied on Fox's professional advice as his accountant, this argument is undermined by the testimony indicating that the Blanchards misled and withheld pertinent information from Fox. Since a reasonable trier of fact could have concluded beyond a reasonable doubt that Blanchard knowingly filed false claims for tax refunds, we hold that sufficient evidence supported his convictions under § 287.

### F. Amount of restitution

As part of Blanchard's sentence, the district court imposed restitution in the amount of $195,852.60, pursuant to 18 U.S.C. §§ 3663 and 3663A, which stipulate that restitution is required for victims of offenses under Title 18 of the United States Code. *See* 18 U.S.C. §§ 3663, 3663A(c)(1)(A)(ii) (providing for mandatory restitution to victims of any offense against property under Title 18, including any offense committed by fraud or deceit). Blanchard argues that the amount of restitution imposed erroneously

includes both the Federal Insurance Contributions Act (FICA) taxes for which he is personally liable under 26 U.S.C. § 3101(a) and the FICA taxes for which the Company is liable under 26 U.S.C. § 3111(a). The Government agrees that the restitution figure includes taxes that the Company owes the IRS, for which Blanchard is not liable, and argues that the total amount of restitution that can be ordered is $91,669.

However, while §§ 3663 and 3663A require that restitution be made to victims of offenses against property under Title 18, these provisions do not authorize restitution for offenses under Title 26. Blanchard was convicted of three counts of making false claims in violation of 18 U.S.C. § 287, for which restitution of $11,639 was due. But the remainder of the proposed restitution amount, $80,030, is attributable to Blanchard's failure to account for and pay over taxes under 26 U.S.C. § 7072, so is not authorized by §§ 3663 and 3663A.

As the Government correctly notes, the district court also may impose restitution as a condition of supervised release. *See* 18 U.S.C. § 3583(d) (providing that a court may order as a condition of supervised release "any condition set forth as a discretionary condition of probation in section 3563(b)"); *id.* § 3563(b) (providing that a court may require as a condition of probation that the defendant "make restitution to a victim of the offense under section 3556 (but not subject to the limitation of section 3663(a) or 3663A(c)(i)(A))"). Nonetheless, we do not find it appropriate to uphold the imposition of the additional $80,030 without knowing whether the district court would have done so had it not thought itself bound by §§ 3663 and 3663A. On remand, the district court should determine whether some or all of the $80,030 previously imposed pursuant to these provisions should be reimposed as a condition of Blanchard's supervised release.

### III.  CONCLUSION

For the reasons presented above, we **AFFIRM** the conviction and sentence of imprisonment but **VACATE** the restitution order and **REMAND** for further proceedings consistent with this opinion.