NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0055n.06

No. 24-1525

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Jan 30, 2025

KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| RYAN DANIEL RICHMOND, | ) | MICHIGAN |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

Before: SUTTON, Chief Judge; KETHLEDGE and MURPHY, Circuit Judges.

MURPHY, Circuit Judge. Ryan Richmond failed to disclose his income from a medical-marijuana business to the IRS. A jury convicted him of several tax crimes, and a district court required him to pay over $2.75 million in restitution. Richmond now argues that Congress lacks the constitutional authority to regulate marijuana and that its tax laws impose an unconstitutional "penalty" on marijuana sales. Richmond also argues that the district court violated his right to the effective assistance of counsel by failing to grant a continuance of trial so that his newly retained lawyers could properly prepare. And he argues that the court wrongly failed to offset from its restitution award the profits that he had distributed to a partner in the marijuana business.

Richmond's claims lack merit. He did not raise his challenge to Congress's regulatory authority in the district court, and he cannot show plain error under existing precedent. Further, the district court reasonably found that Richmond had repeatedly sought to delay his trial by

switching lawyers, so it did not abuse its discretion when it denied another continuance. Lastly, the record evidence allowed the court to find that Richmond was the sole owner of the marijuana business and thus that he should pay the full restitution amount. We affirm.

I

Because this appeal follows a jury trial, we recite the facts in the light most favorable to the jury's guilty verdict. *See United States v. Maya*, 966 F.3d 493, 496 (6th Cir. 2020).

After the State of Michigan legalized marijuana for medical use, Richmond opened a medical marijuana dispensary in Michigan that he named Relief Choices. Richmond incorporated Relief Choices as a single-member limited liability company. He was the company's sole owner. Relief Choices sold "[c]annabis products" in "edible or smokable or concentrated forms" to customers in need. Schell Tr., R.116, PageID 917. The customers could pay either in cash or with a credit card.

From the start, Jacob Schell helped Richmond run the "day-to-day operations" of Relief Choices. Schell Tr., R.116, PageID 911. At first, Schell sought to co-own the company. But Richmond persuaded Schell to incorporate a separate entity so that the pair could have "a business-to-business relationship." *Id.*, PageID 910. Relief Choices and Schell's company entered into a profit-sharing agreement.

Soon after Relief Choices opened its doors, its business took off. In 2012, the company's total revenue exceeded $1.2 million. In 2013, its total revenue had grown to over $1.6 million. And in 2014, that revenue had grown even more to over $1.8 million. During this time, Relief Choices also expanded to three different Michigan locations.

But Richmond's tax returns did not reveal this growth. In October 2010, Richmond had asked the IRS to create a tax identification number for Relief Choices and had identified himself

2

as the "sole member" of the company on this application. Copenhagen Tr., R.116, PageID 786. Taxpayers who own this type of company must include the company's gross receipts and expenses on a schedule that they attach to their individual tax returns. Yet Richmond included no financial information for Relief Choices in his tax returns for the years 2011 through 2013. He instead listed the financial information for a separate web-design business that he had previously incorporated: Richmond Media. Since Richmond did not report any revenue from Relief Choices, he (and his wife) listed between $197,412 and $341,087 in income from 2011 to 2013.

Richmond's tax returns came to the IRS's attention in late 2014. The agency had received tax records from a credit-card company suggesting that Richmond's businesses had more revenue (in credit-card sales) than he had listed on his 2012 tax return. IRS agents opened a "correspondence" audit of Richmond by sending him a letter suggesting that he owed over $66,000 in taxes for 2012.

In response, Richmond hired an accountant to prepare an amended tax return for that year. The accountant warned Richmond that he needed to accurately report the gross receipts from Relief Choices. The tax code also barred Relief Choices from deducting most of its business expenses because marijuana remained illegal to distribute under federal law. *See* 26 U.S.C. § 280E. The accountant thus recommended that Richmond "bite the bullet," "come clean" that he was running a marijuana business, and report all its revenue (but none of its nonqualifying expenses). Campbell Tr., R.116, PageID 987–88, 990. Richmond rejected this advice. He instead knowingly filed an inaccurate amended return that reported a portion of Relief Choices' revenue and many of its nonqualifying expenses under the name of Richmond Media (not Relief Choices). Around the same time, Richmond also decided not to file any tax return at all for 2014.

Unsatisfied with the amended 2012 return, the IRS agents opened a more thorough "field" audit of Richmond. As part of this audit, they met with him in October 2015. When they asked Richmond about Relief Choices, he denied owning the company and identified Schell as its owner. IRS agents met with Richmond two more times in 2016. He continued to deny owning Relief Choices and said that he spent only a few hours each month providing any services to this business.

Ultimately, in March 2021, federal prosecutors charged Richmond with seven tax offenses. Richmond repeatedly delayed his trial both by changing his mind over whether he wanted to represent himself and by switching between lawyers. After the district court denied Richmond's final motion for a continuance, it held a four-day jury trial in September 2023.

The jury found Richmond guilty of five counts. It concluded that Richmond had corruptly obstructed the IRS's administration of the tax laws by lying about his relationship to Relief Choices. *See* 26 U.S.C. § 7212(a). It concluded that Richmond had committed tax evasion for the tax years 2012, 2013, and 2014. *See id.* § 7201. And it concluded that he had willfully failed to file a tax return for 2014. *See id.* § 7203.

At sentencing, Richmond argued that the district court should subtract the money that he gave to Schell under their profit-sharing agreement from the total amount that he must pay to the IRS. The court rejected this argument. It ordered him to pay $2,777,684.49 in restitution. The court also calculated Richmond's guidelines range as 41 to 51 months' imprisonment. But it chose to vary below this range by imposing a 24-month sentence.

## II

Richmond raises three arguments on appeal. He first asserts that the Commerce Clause does not give Congress the power to penalize marijuana sales. He next suggests that the district

court violated the Sixth Amendment by failing to continue his trial. He lastly challenges the restitution award.

A. Commerce Clause Challenge

Richmond primarily argues that Congress lacked the constitutional authority to require him to pay taxes on his marijuana sales. He recognizes that Congress may "lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States[.]" U.S. Const. art. I, § 8, cl. 1. But he argues that Congress's taxing scheme for marijuana falls outside this power because the scheme creates a "penalty" rather than a "tax" on marijuana sales. *Cf. Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 563–70 (2012). His rationale? He points to the law that singles out businesses that sell federally controlled substances for disfavored tax treatment by barring them from deducting most of their expenses from their tax liability. *See* 26 U.S.C. § 280E. According to Richmond, Congress must instead justify this purported penalty (if at all) under its distinct power "[t]o regulate Commerce . . . among the several States[.]" U.S. Const. art. I, § 8, cl. 3. And he argues that it lacks the power to penalize intrastate marijuana sales under the Commerce Clause.

We need not reach the merits of these arguments. Richmond concedes that he did not raise his constitutional challenge in the district court, so he has forfeited the challenge on appeal. *See Puckett v. United States*, 556 U.S. 129, 134–35 (2009); *United States v. Olano*, 507 U.S. 725, 731 (1993). He thus must satisfy the demanding plain-error standard of review. *See Puckett*, 556 U.S. at 135. This standard requires Richmond to prove (among other things) that Congress committed a "clear or obvious" constitutional violation. *Id.*

He cannot make this showing. Even assuming that the tax laws impose a penalty on marijuana sales, Richmond has not established that Congress obviously lacks the power to regulate

5

those sales under the Commerce Clause. To the contrary, the Supreme Court has held that the Commerce Clause allows Congress to bar individuals from growing small amounts of marijuana at their home for personal consumption. *See Gonzales v. Raich*, 545 U.S. 1, 6–7, 15–22 (2005). Suffice it to say, *Raich* suggests that Congress also has the power to regulate a business that sells well over a million dollars' worth of marijuana in a year.

Richmond rightly concedes that we cannot "overrule" *Raich*. Appellant's Br. 46. But he points out that the legal landscape has changed since then. At the time of *Raich*, Richmond suggests, Congress closely regulated marijuana distribution. Now, however, Congress has effectively adopted a patchwork regulatory regime tied to each State's marijuana laws. These legal changes, according to Richmond, permit us to depart from *Raich*. Indeed, Justice Thomas has suggested that the Court should reconsider *Raich* on these grounds. *See Standing Akimbo, Inc. v. United States*, 141 S. Ct. 2236, 2236–38 (2021) (Thomas, J., respecting the denial of certiorari). But it is at least debatable whether the changes matter under the "deferential review" that *Raich* gave to Congress's exercise of its commerce power. *Cf. Nat'l Republican Senatorial Comm. v. FEC*, 117 F.4th 389, 395–96 (6th Cir. 2024) (en banc). The changes thus do not make *Raich*'s invalidity "clear or obvious" under the plain-error test. *Puckett*, 556 U.S. at 135. Given that decision, we reject Richmond's forfeited constitutional claim.

### B. Sixth Amendment Challenge

Richmond next argues that the district court violated the Sixth Amendment because it refused to grant a continuance that would have provided his newly retained lawyers several more weeks to prepare for his trial. He is mistaken.

The Sixth Amendment gives a criminal defendant the right "to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. A decision to deny defense counsel more time

to prepare for trial can violate this right. *See Morris v. Slappy*, 461 U.S. 1, 11–12 (1983); *United States v. Gallo*, 763 F.2d 1504, 1523–24 (6th Cir. 1985). But the Sixth Amendment gives district courts "broad discretion" over their schedules. *Morris*, 461 U.S. at 11. So a denial of a continuance will violate a defendant's right to counsel only if a court arbitrarily insists on speed even when a defendant offers a valid reason why defense counsel needs more time to prepare. *See id.* (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)). And even if the defendant can satisfy this test, the defendant must also explain why the denial prejudiced the defense. *See United States v. Warshak*, 631 F.3d 266, 298–99 (6th Cir. 2010). Given the deference due the district court, moreover, we review a denial of a continuance for an abuse of discretion. *Id.* at 298.

The district court did not abuse its discretion here. Far from an "arbitrary" denial of Richmond's motion, the court issued a five-page opinion listing its reasons for refusing to continue the trial. *Morris*, 461 U.S. at 11. Of most note, the court found that Richmond had been "using the issue of counsel to unreasonably delay trial." Op., R.104, PageID 682 (citation omitted). The record reflects this finding. At least three times between the original trial date (August 2021) and the actual trial date (September 2023), Richmond followed the same pattern: he would choose to represent himself before retaining new counsel shortly before the scheduled (or rescheduled) trial date. This practice forced the court to repeatedly delay trial so that new counsel could prepare. On the last of these occasions, the court agreed to postpone the trial until September 2023 "on the condition that" the court would grant "no further extensions" beyond that date. Op., R.104, PageID 684. Nevertheless, these new lawyers requested another 28-day extension three weeks before this trial date. The court reasonably denied that motion (the one at issue here) based on the "significant delays" that Richmond had already caused. *Id.*

7

Other grounds further supported the court's decision. For one thing, Richmond's lawyers gave "inadequate explanations" as to why they lacked enough time. *Id.* They suggested that other matters had "interrupted and slowed their work" on Richmond's case. Mot., R.101, PageID 667. But they identified only one example: a case that required "nearly" a "full week" of work. *Id.* And the court had given them three months to prepare. *Cf. United States v. Cordell*, 924 F.2d 614, 617 (6th Cir. 1991) (per curiam). His lawyers also did not offer specific reasons why they could not get up to speed on Richmond's case in the remaining three weeks. *Cf. Beuke v. Houk*, 537 F.3d 618, 641–42 (6th Cir. 2008). For another thing, the continuance would have pushed the trial to a date that conflicted with the court's and prosecutor's schedules. Op., R.104, PageID 681. All told, the court reasonably refused to delay Richmond's trial any more than he had already delayed it.

### C. Restitution Challenge

Richmond lastly turns to the court's restitution award. He claims that the court should not have required him to pay the taxes owed on the money that he gave to Schell under their profit-sharing agreement. The parties do not dispute any of the governing legal principles for this claim, so we may assume them here. They agree that the district court could require Richmond to pay restitution to the IRS. *Cf. United States v. Kilpatrick*, 798 F.3d 365, 391 (6th Cir. 2015); *United States v. Blanchard*, 618 F.3d 562, 577 (6th Cir. 2010). They agree that the government bore the burden to prove the amount of the IRS's loss from the tax evasion by a preponderance of the evidence. *Cf. United States v. Smith*, 79 F.4th 790, 798 (6th Cir. 2023). And they agree that the district court had discretion to hold Richmond liable for the full amount of the monetary loss even if Schell caused some of it. *Cf. id.*; *United States v. Bailey*, 973 F.3d 548, 576 (6th Cir. 2020).

The parties disagree only on a factual point. Richmond says that the district court denied this claim based on a misreading of the record and so never decided the discretionary question

8

whether to hold him responsible for losses that Schell caused.  According to Richmond, the court found that he had presented "*no* evidence of a partnership" with Schell.  Appellant's Br. 55 (emphasis added).  This claim was mistaken, Richmond continues, because he introduced *some* evidence that Schell co-owned Relief Choices (including, for example, testimony from employees).  But Richmond misreads the district court's findings.  The court simply held that the evidence had not "established" Schell's coownership.  Sent. Tr., R.145, PageID 1865.  And plenty of evidence supported that finding (even if Richmond introduced competing evidence).  Among other things, Richmond identified himself as the "sole member" of Relief Choices on his IRS application for a tax identification number.  Copenhagen Tr., R.116, PageID 785–86.  And Schell testified that Richmond refused his request to be a co-owner.  Schell Tr., R.116, PageID 910.  The district court thus reasonably found that Richmond was the single owner of Relief Choices.

We affirm.